JOHN F. STEEVES and Others, Respondents, *v.* MARGARET SINCLAIR and Another, Defendants; CHARLES SIEDLER and Others, Appellants.

*Mechanic's lien — what constitutes a consent by a landlord to the erection of buildings on the demised premises by the tenant — limit of his liability.*

A lease, reciting that the tenant thereby agrees to erect buildings upon the demised property to cost at least $5,000 and desires to procure a loan of $3,500 to be applied to the erection of said buildings, for which amount the landlord, in consideration of the fact that the buildings will revert to him at the termination of the lease, agrees to execute a bond and mortgage in the tenant's behalf " to enable her to raise the sum of money in question for the purpose of fully completing said building and the discharge of all liens, if any," constitutes a consent to the erection of the buildings under such circumstances as to bring the landlord within the terms of the statute relating to mechanics' liens.

The liability of the landlord is not limited to the amount of the loan to be thus secured by bond and mortgage.

APPEAL by the defendants, Charles Siedler and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 29th day of May, 1900, upon the report of a referee.

The action was brought upon an undertaking given to discharge mechanics' liens.

*Albridge C. Smith*, for the appellants.

*George W. Stephens*, for the respondents.

HATCH, J.:

This action was commenced to foreclose three mechanics' liens in one action. One filed by Ephraim C. Gates (since deceased), John F. Steeves, Henry H. Barnard and Bradley L. Eaton, partners under the firm name and style of Church E. Gates & Co., for $1,618.83; one filed by Sandy M. Pasquale & Son, for $489.25, assigned to Barnard, one of the plaintiffs; and one filed by Frank Zanetti, for $127.50, also assigned to Barnard against Margaret Sinclair, Sarah H. Van Schaick and Charles Siedler.

After the trial had commenced the plaintiff Ephraim C. Gates died, the cause of action surviving to the other members of the firm, who are now the plaintiffs herein. During the course of the trial the defendant Siedler, who was the owner of the premises against which the liens were filed, bonded the lien in pursuance of the provisions of the statute, his sureties being Amedee Spadone and Henry M. Keasby, who joined with the said Siedler in the undertaking required by law to discharge the three liens, and they were accordingly discharged of record. The sureties were then brought into the action as defendants by a supplemental summons and complaint, by which a personal judgment against the sureties is demanded for the amount of the several liens.

The referee found in favor of the plaintiffs, holding that the liens were good and subsisting liens upon the fee of the land, and directed judgment against the defendants Siedler, Spadone and Keasby for the amount of the liens, with interest and costs. Judgment was entered accordingly, and from such judgment this appeal is taken by such defendants.

The principal question involved in the appeal is, whether or not the defendant Siedler consented to certain erections made upon his premises by the defendant Margaret Sinclair or the defendant Sarah Van Schaick, within the meaning of the statute (Chap. 342, Laws of 1885), under and pursuant to which the liens were filed, and for the erection of which the lienors furnished materials and performed labor and services.

On the 2d day of June, 1894, the defendant Siedler, who owned the premises described in the complaint and notices of lien, made a lease to the defendant Sarah F. Van Schaick for a term of ten years, at a rent of $300 per annum, payable quarterly in advance. It was provided in the lease that, in case of default in any of the covenants therein contained, it should be lawful for the lessor to re-enter the premises, to remove all persons therefrom, and to declare the lease and agreement null and void.

The lease also contained the following provisions : " And whereas the said party of the second part desires and hereby agrees to erect buildings and improvements upon the said property, to cost at least Five thousand (5,000) dollars, and as she desires to procure a loan of Three thousand (3,000) dollars on a part of the said property known as lots 1682, 1683, 1684 and 1685, to be applied to the erection of such buildings and improvements : Now, therefore, to enable her to do so, and because the title to the said property is vested in the said party of the first part, and in consideration of the fact that said buildings and improvements will revert to the party of the first part at the termination of this lease, he agrees that he will sign a bond and mortgage in her behalf to enable her to raise the sum of money in question for the purpose of fully completing said building and the discharge of all liens, if any. But it is provided that she shall also sign such bond, so as to make her jointly liable with the said party of the first part in case there should be a deficiency in foreclosure proceedings.

" The said party of the second part agrees to submit plans of the buildings and structures to the said party of the first part and they are to be approved by him and the buildings are to be constructed in conformity thereto. And the said party of the second part further agrees that at the expiration of this lease all of the buildings, structures and improvements of every kind, name and nature

which she shall cause to be erected on the said premises shall revert
to and belong to the party of the first part unless the same shall be
acquired by the said party of the first part at an earlier date by reason
of a foreclosure of the said mortgage or by reason of abandonment
of the premises by the said party of the second part or any forfeit-
ure of this lease in consequence of any violation of any of the
covenants thereof." The lease further provided that the lessee
should have the privilege of purchasing four of the lots included in
the lease within three years from the date of the lease, but in case
she availed herself of the privilege she should become solely
responsible for the $3,000 mortgage, and should discharge the same
at her own cost and expense.

It appears that the lessee, Mrs. Van Schaick, was a mere trustee
for the benefit of the defendant Margaret Sinclair; she had no
beneficial interest whatever in the lease, holding it solely for the
benefit of Mrs. Sinclair. Upon the premises mentioned in the lease
the defendant Margaret Sinclair proceeded to erect a hotel, for
which she purchased from the plaintiffs the lumber and timber for
the price of which their said lien was filed, and in the erection of
which the said lienors M. Pasquale & Son and Zanetti performed
labor and services for which their respective liens were also filed.

The lease and agreement of June 2, 1894, was modified by
increasing the mortgage from $3,000 to $3,500. The mortgage was
executed for that sum in performance of the contract and the pro-
ceeds thereof turned over to the defendant Margaret Sinclair. At
the time of the execution of the mortgage the building was
substantially completed.

The defendant Siedler alleged in his answer, as a separate defense,
that he performed his contract contained in the lease of June 2,
1894, in making the loan of $3,500 as therein provided for, and by
reason thereof the premises are discharged of the liens sued on in
this action.

It is claimed by the defendant that the liens assigned are not
valid for the reason that they were filed against William Sinclair, as
the party for whom the labor was performed and the materials fur-
nished, instead of against Margaret Sinclair. This objection can-
not avail. Failure to state the true name of the owner or contractor
in the lien, by express provision of statute, does not affect the valid-

ity of the lien. (*Gass* v. *Souther*, 46 App. Div. 256.) The name of the owner in this lien is correctly given and he is the only person, aside from his bondsmen, who is affected thereby. The Pasquale & Son lien was filed against Siedler, as owner, and to William Sinclair, as the party to whom materials were furnished. It is urged against this lien that it was not filed in time; that the lienor resorted to "tacking," *i. e.*, bringing in contracts or day's work against which the statutory period had run, by tacking them to subsequent contracts or work so as to extend the time for filing the lien as to previous matters.

There are three items claimed for in the notice: *First*, digging cellar and building foundation at a contract price of $210; *second*, plastering at an agreed price of $474, and services of wagon, team and men, the total price of all such labor being $739.25; admits payment of $250 and claims for balance of $489.25. This lien was filed October 23, 1894. The first contract was completed in May, 1894; the last item for grading was on July 18, 1894; the plastering was finished in the latter part of August, 1894. The first two items could not properly be included in the lien because more than ninety days had elapsed since the completion of the contract and the last item of work. But the agreed price of the last job was $494. This was not finished until the last part of August, and the lien was filed before the expiration of ninety days from the date of finishing. The referee has allowed on this claim $489.25; evidently crediting the $250 paid on the two prior contracts and applying the $5 overplus upon the last one. It is thus apparent that no resort was had to "tacking," and the lien for the last contract was valid.

The most important question which the case presents is whether the defendant Siedler, as owner, consented to the erection of the buildings under such circumstances as bring him within the terms of the statute. The cases are numerous which hold that where the owner makes a lease with the agreement that the tenant shall make improvements which are to become the property of the landlord at the expiration of the term, there is an implied consent of the owner to the furnishing of the necessary labor and materials for such improvements. *Schmalz* v. *Mead* (125 N. Y. 188) and *Miller* v. *Mead* (127 id. 544) sufficiently support this principle. In these cases there was an agreement whereby it was known to the owner

that the improvements would be made, and from this fact the consent was implied. In the absence of such an agreement there is no such implication, and the consent must be either expressly given or implied upon proof of facts which authorize its inference. (*Cowen* v. *Paddock*, 137 N. Y. 188.) In the absence of such an agreement or proof of circumstances from which it can be implied, no lien attaches as against the owner. As is pointed out by Judge FOLLETT in *Vosseller* v. *Slater* (25 App. Div. 368), any other rule might "improve the vendor out of his estate." This case was affirmed on appeal (163 N. Y. 564). If the vendor is only made liable upon his agreement, express or implied, it would seem to follow as a logical sequence that he may place a limit upon his liability. And we have no doubt that, if notice of such limitation be brought home to the materialman, no lien would attach in excess of such amount. Under such circumstances, the lienor could not be misled to his prejudice, and no equities would arise in his favor. Nothing that is said in *Schmalz* v. *Mead* (*supra*) conflicts with this rule. In that case the court simply gave effect to the agreement under which the owner contracted to sell the land, and as no limitation was shown to exist which was called to the attention of the materialman, the mere specification of the amount which was to be advanced did not overcome the implied agreement which the statute raised. The latter cases, which we have cited, seem to hold that it is still within the power of the owner to limit his liability. It is not necessary, perhaps, that we determine this question in this case, as it does not seem to be really involved. In the present case the lease presents the same question as was found present in the *Schmalz* case. The lease in the present case limits the sum which was to be advanced for the purpose of erecting the buildings. It in nowise assumes to limit the sum to be expended to that amount, and while the materialman had notice of the terms of the lease, yet we think that it alone was not sufficient to limit the liability of the owner, or overcome the presumption which the statute raises that the owner consented, and such seems to be the express doctrine announced in the *Schmalz* case. Besides by the express provisions of the lease it contemplated that the buildings would cost $5,000 to erect. So that the owner had actual notice of the amount which it was proposed to expend, and cannot, therefore, insist that the materialman

be prejudiced because he furnished beyond the amount of the advance, as it was to be expected that this would be done.

If these views are correct, it follows that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.