McNULTY BROS. v. OFFERMAN et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. APPEAL AND ERROR (§ 927*)—NONSUIT—REVIEW.

    A party appealing from a nonsuit is entitled to have the case reviewed in the light of the facts and inferences most favorable to him.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4024; Dec. Dig. § 927.*]

2. APPEAL AND ERROR (§ 1012*)—FINDINGS—CONCLUSIVENESS.

    Where the case was submitted for determination on disputed evidence, or evidence from which different conclusions might be drawn, a finding

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sustained by any evidence will not be disturbed on appeal, unless it is against the clear weight of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970–3978; Dec. Dig. § 1012.*].

3. TRIAL (§ 388*)—FINDINGS—NONSUIT.

Under Code Civ. Proc. § 1021, providing that the decision of the court on the trial of issues of fact or law, where a nonsuit is granted, must direct the entry of judgment, and it shall not be necessary to make any findings of fact, the court granting a nonsuit in a suit in equity has no right to make findings on disputed or inconclusive evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 910; Dec. Dig. § 388.*]

4. TRIAL (§ 384*)—DISMISSAL—SUBMISSION TO COURT.

Where defendant in an equity case moves to dismiss at the close of plaintiff's case, and so acts as to make his statement equivalent to a statement that he rests without giving any evidence, the court may determine all the issues and decide all the questions of fact and law as fully as it could have done had defendant's counsel expressed the legal effect of his action in words.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 900; Dec. Dig. § 384.*]

5. JUDGMENT (§ 305*)—CONFORMITY TO DECISION—DECISION ON THE MERITS.

In a suit to enforce mechanics' liens, plaintiff and defendant lien claimants introduced evidence in support of their claims. Defendant owners then moved to dismiss the complaint and the claims of the defendant lienors on the ground that they had, respectively, failed to prove a cause of action. The motion was granted. Subsequently a decision containing findings of fact and conclusions of law was made by the trial court, and judgment was entered thereon on the merits. When the motion to dismiss was made, the court said that he thought that the law had better be tried out at the Appellate Division, and that it would do anything to present an unembarrassed question of law to the Appellate Division. *Held*, that the parties did not intend to submit the case for decision on the merits, and the judgment should have been modified by striking out the words "on the merits."

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 596; Dec. Dig. § 305.*]

6. MECHANICS' LIENS (§ 73*)—LIABILITY OF OWNER—"CONSENT."

The "consent" by an owner to improvements on his premises within the lien law involves a power of choice and the exercise of will respecting the subject thereof, and an owner who has power to choose whether or not his property shall be improved, and who executes a lease requiring the tenant to make substantial improvements, consents to the improvements within the law.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 101; Dec. Dig. § 73.*

For other definitions, see Words and Phrases, vol. 2, pp. 1437–1441.]

7. LANDLORD AND TENANT § 182*)—LEASE—LIABILITY FOR RENT—DEFENSES.

Where a tenant contracting to make substantial improvements on the leased premises takes possession and then refuses to make the specified improvements, or such others as may be necessary to equip the premises for the purposes intended, he has no defense to an action for rent for the months in which the lease specified that rent should be waived during the period estimated for the making of the improvements.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 182.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. MECHANICS' LIENS (§ 73*)—CONSENT OF OWNER—EVIDENCE.

Where a lease contemplated the making of improvements by the tenant costing $60,000, and the improvements were not made to improve the landlord's property solely in consideration of his agreement to pay $15,000 therefor, but the improvements were made for the benefit of the landlord because of the relations existing between the parties as landlord and tenant, and because the landlord believed that as a result his tenant would be in a better position to pay the rent agreed on, and his reversion would be increased in value at least beyond the expense thereof to him, the landlord consented to the improvements within the lien law.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 101; Dec. Dig. § 73.*]

9. MECHANICS' LIENS (§ 73*)—CONSENT OF OWNER—EVIDENCE.

A stipulation in a lease contemplating the making of substantial improvements on the premises by the tenant which makes the landlord's agreement to pay any sum to the tenant for the improvements conditioned on satisfactory evidence that there are no liens is an indication that the landlord contemplates the liability of his property to claims of lienors.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 101; Dec. Dig. § 73.*]

10. MECHANICS' LIENS (§ 73*)—LANDLORD AND TENANT—REPAIRS BY TENANT —EXTENT OF LIEN.

A general clause in a lease requiring compliance with the rules and regulations of a municipal department of health or buildings will not make an owner liable for repairs required thereby, and ordered by the tenant, which become necessary owing to his conduct subsequent to his entry on the premises, but where, in connection with the giving of the lease, it is contemplated that extensive alterations shall be made by the tenant and the lease stipulates that the alterations shall be made in accordance with the requirements of a municipal department of health or buildings, and labor and materials beyond that originally contemplated become necessary to comply with such regulations, the landlord must be deemed to have consented to such additions within the lien law.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 101; Dec. Dig. § 73.*]

11. MECHANICS' LIENS (§ 73*)—LANDLORD AND TENANT—REPAIRS BY TENANT —EXTENT OF LIEN.

Where a lease contains a provision that no changes shall be made on the demised premises without the consent of the landlord, the subsequent consent to a particular improvement to be done in a particular way is not a consent to one much more extensive and done in a more extraordinary way, even though of a similar character, and mere knowledge of such change is not alone proof of the necessary consent of the landlord within the lien law.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 101; Dec. Dig. § 73.*]

12. MECHANICS' LIENS (§ 73*)—LANDLORD AND TENANT—REPAIRS BY TENANT —EXTENT OF LIEN.

Where a lease provided that an improvement on the premises should be made by the tenant in a particular manner, and that specified materials should be used, and subsequently the tenant changed the method of performance and the materials employed, and thereby increased the cost thereof, the fact that the landlord advised of the changes and their extent did not object thereto, but encouraged the tenant to proceed by suggesting that under certain conditions he would bear part of the addi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tional expense, justified a finding of consent necessary to bind the landlord under the lien law.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 101; Dec. Dig. § 72.*]

Appeal from Special Term, Kings County.

Action by McNulty Bros. against Carsten Henry Offerman and others to enforce mechanics' liens claimed by plaintiff and certain of the defendants. From a judgment denying relief, and from an order denying a motion to strike words from the judgment, plaintiff and certain of the defendants appeal. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, BURR, and RICH, JJ.

William W. Robison, for appellant McNulty Bros.

Robert H. Wilson, for appellants Robert T. McMurray & Bro. and Cross, Austin & Ireland Lumber Co.

John M. Perry, for appellant American Elevator Co.

Wayland E. Benjamin, for appellant George Weiderman Electric Co.

William H. Hamilton (Norman C. Conklin, on the brief), for respondents.

BURR, J. Plaintiff and the defendant-appellants seek to enforce against the real property owned by the defendant-respondents mechanics' liens, filed by them, respectively, upon the ground that they have performed labor or furnished materials for the improvement thereof, with the consent of said owners. At the threshold of the case we are confronted with the question as to the nature of the judgment which has been entered. After plaintiff had introduced its evidence and rested, and the defendant lienors who claimed affirmative relief against their codefendants, the owners, and may be deemed quasi plaintiffs, had also introduced evidence in support of their respective claims, defendant owners moved to dismiss the complaint and the claims of the lienors other than the plaintiff upon the ground that they had, respectively, failed to prove a cause of action against them. That motion was granted. Subsequently a decision containing findings of fact and conclusions of law, separately stated, was made by the trial court, and judgment was entered thereon "upon the merits." Thereafter a motion was made by plaintiff and defendant-appellants to strike from the decision these findings relating to questions of fact, and to strike from the judgment the words "upon the merits," and insert in lieu thereof "for failure of proof." That motion was denied. From said judgment and order this appeal is taken.

The question is one of substance. If the decision is to be deemed one of nonsuit, then the defeated parties are entitled to have it reviewed in the light of the facts and inferences most favorable to them. Veazey v. Allen, 173 N. Y. 359, 66 N. E. 103, 62 L. R. A. 362. If, however, the case was submitted for determination upon disputed evidence, or evidence from which different inferences or conclusions may be drawn, then, if there is any evidence to sustain the findings of fact, they will not be disturbed unless they are against the clear weight

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

:thereof. Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588; Collins v. McGuire, 76 App. Div. 443, 78 N. Y. Supp. 527. That the statute now contemplates a decision in an equity action analogous to a nonsuit at law seems clear. "The decision of the court, * * * upon the trial of the issues of fact or law, where a nonsuit is granted, must direct the final or interlocutory judgment to be entered thereupon, and in any such case it shall not be necessary for the court * * * to make any finding of fact." Code Civ. Proc. § 1021. Not only is it unnecessary, but the court under such circumstances has no right, to make findings upon disputed or inconclusive evidence. Raabe v. Squier, 148 N. Y. 81, 42 N. E. 516; Place v. Hayward, 117 N. Y. 487, 23 N. E. 25. See, also, Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154. We do not mean to say that in every action in equity when a motion to dismiss at the close of plaintiff's case is made the decision must be treated as one of nonsuit only. Defendant has a right to permit the case to be decided by the trial court upon the facts as they appear from the evidence which is already in the case. His conduct may be equivalent to a statement by him that he rests without giving any evidence. In such case the court is authorized to determine all the issues and to decide all questions of fact and law as fully as it would have been had defendant's counsel expressed the legal effect of his action in words. Deeley v. Heintz, 169 N. Y. 129, 62 N. E. 158; Keyes v. Smith, 183 N. Y. 376, 76 N. E. 473; Neuberger v. Keim, 134 N. Y. 36, 31 N. E. 268; Lidenthal v. Germania Life Ins. Co., 174 N. Y. 76, 81, 66 N. E. 629; Griffen v. Mechanics' & Traders' Bank, 61 App. Div. 434, 70 N. Y. Supp. 651. That it was not the intention of the parties or of the court at the time the motion was made and granted to regard the case as finally submitted for decision upon the merits is apparent. When the motion to dismiss was made, the court said:

"I think you had better try out the law at the Appellate Division. I am going to grant the motion."

Some discussion as to the propriety of findings followed, and the court said:

"I will refuse to find, except sufficiently to state the one question, that the facts proven do not constitute a cause of action, and will find that there was no consent on the part of the owners within the meaning of the law. Every fact and every inference from every fact must be deemed to be in the lienor's favor by the court. That is beyond discussion. I will simply find that there were no facts proven on which to base a conclusion of consent."

And again:

"I will do anything to present an unembarrassed question of law to the Appellate Division. Anything that the defendant-lienors and the plaintiff think is essential to raise that single question as to whether these owners gave consent I will sign."

An examination of the evidence leads us to believe that different inferences might be drawn therefrom as to the consent of the defendant owners and the extent thereof, and the discussion in respondent's brief in respect thereto confirms this view. It may well be urged that if the appellants had supposed that a decision was to be made,

including findings of fact, based on such evidence, they would have sought by argument to change the view of the Trial Court with respect to the effect thereof. We think, therefore, within the authorities above cited, findings of fact should not have been included in the decision, nor judgment granted on the merits, and the motion to strike out such findings and to amend the judgment should have been granted. We shall consider the case, therefore, as one where a nonsuit had been granted.

From the evidence it was possible for the court to find the following facts: Prior to April 26, 1907, negotiations were had between defendants Carsten Henry Offerman, John Offerman, Theodore Offerman, Lena Maria Rasch, and Anna C. Schmidt on the one part, either personally or through their duly authorized agent, and defendant Ralph Leininger, on the other part, relative to the leasing of certain premises owned by the former, known as Nos. 503 to 513 Fulton street, Nos. 234 to 248 Duffield street, and No. 237 Duffield street and No. 409 Bridge street, in the borough of Brooklyn, to be used as a department store. The buildings known as 503 to 513 Fulton street and 234 to 248 Duffield street were in such condition that extensive improvements and alterations were necessary to make them well adapted for such use. The expense of the proposed improvements was a matter of discussion between said parties, as was also the estimated cost thereof, which was deemed to be about $60,000. The owners of the property were asked to contribute in the first instance onehalf, and then one-third, of the estimated cost of such improvements. It was finally agreed that they should contribute the sum of $15,000 toward the same upon certain conditions. This sum was fixed upon, not because of any contemplated change in the extent or cost of such improvements, but by reason of possible expenditures on the part of the defendant owners in connection with the Bridge street property, which was to be included in the said lease. On the 27th of April, 1907, a lease of the premises was executed by these defendants to the said Leininger. It was at first proposed to take the lease in the name of the Kingston Realty Company, but, a question having arisen as to the corporate power of said company to take a lease of a department store, the lease was made to defendant Leininger, and the Kingston Realty Company guaranteed the performance by him of the covenants therein. This lease was for a period of 10 years from May 1, 1907, at a yearly rental of $53,500 for the first two years. The amount of rent was gradually increased until for the last four years of said term an annual rental of $74,000 was to be paid. The lease contained, among others, these provisions:

"It being understood that no rent shall accrue or be payable for the months of May, June, and July, 1907, a part of the period estimated for the making of repairs and improvements as hereinafter set forth, and equipping the premises for a department store. * * * And the party of the second part [Leininger] further covenants and agrees that said premises shall during the said term be occupied and used for the carrying on of the business of a first-class department store, so called. * * * The party of the second part hereby agrees * * * in all respects to comply with any and all requirements of the New York Board of Fire Underwriters and the New York Fire Insurance Exchange with reference to insurance of the buildings

upon said premises and all the appurtenances thereto; to comply with and conform to all rules, orders and regulations of the state and city government, and of any and all their departments and bureaus, including the board of health, department of buildings, and all other departments, boards, and authorities in said city applicable to said premises or any part thereof, for the correction, prevention and abatement of nuisances or other grievances in, upon or connected with said premises, or any part thereof during said term; all at the expense of the party of the second part. And the party of the second part further covenants and agrees that for the sum of fifteen thousand dollars ($15,000)· to be paid to him by the parties of the first part [the Offermans], subject, however, to the conditions as hereinafter provided, he will during the first six months of the term make the following improvements and repairs in and to the building known as Nos. 503 to 513 Fulton street and Nos. 234 to 248 Duffield street, same to be done in a good and workmanlike manner in all respects, under the supervision of a competent architect, to be approved by the parties of the first part, viz., new maple wood flooring on the first floor and basement; appropriate balcony, extending around the walls on the first floor, and divided into suitable rooms; a connection with the subway station from the basement, if permit for the same can be obtained; bringing the second and third floors out even with the Fulton Street front of the building; a new cloak and suit room with retiring room for ladies on the second floor; all show windows changed and improved; kalsomining or painting all walls and ceilings; painting all woodwork inside and outside, including all pillars; cleaning entire fronts of building; repairing roof and placing elevators and all plumbing in good condition throughout; it being understood and agreed that said fifteen thousand dollars ($15,000) shall be paid as follows, and only upon the following conditions, viz.: (1) That the party of the second part has theretofore paid all instalments of rents as they became due hereunder, and faithfully kept and performed all the other terms and conditions hereof for the period of at least nine months; and (2) that there be produced to the parties of the first part a certificate of the architect showing that all said improvements and repairs have been done and performed in a good and workmanlike manner and within the period above specified and that all the cost and expense thereof has been actually paid and satisfied by the party of the second part, together with proof by search and certificate of the clerk of Kings county, showing that no liens for any work or materials employed in connection with said improvements and repairs have been filed against the premises or any part thereof and remain unsatisfied; it being understood that the parties of the first part may (but only at their election, however) out of said fifteen thousand dollars ($15,000) or any part thereof, and on account of the same pay off and discharge any lien or alleged lien that may be so filed. All improvements and repairs to the buildings shall belong to the parties of the first part as soon as made."

Leininger thereupon entered into possession of the said premises, and remained in possession until the 1st day of October, 1907, when, in summary proceedings instituted by defendant owners for nonpayment of rent, he was dispossessed. They thereupon took possession of the said premises, with all the buildings and improvements thereon, which possession they have since retained. Leininger was the president and principal stockholder of the Kingston Realty Company, and thereafter, either personally or acting through the said realty company as his agent, entered into contracts for materials and labor with the plaintiff and defendants McMurray & Bro., American Elevator Company, George Weiderman Electric Company, and Cross, Austin & Ireland Lumber Company. Besides these, contracts were entered into or materials purchased from a large number of other persons who were original parties defendant to this action, but whose

claims it is not necessary to consider since they have not appealed from the judgment entered herein.

It would have been likewise possible for the court to find that on May 21, 1907, a contract was made with plaintiff for certain ornamental plaster work and materials on the first floor ceiling of the buildings at Nos. 503 to 513 Fulton street, which contract was substantially performed about July 1, 1907, and that on the 28th day of September there was due to said plaintiff on account thereof the sum of $6,440, and that on that day it filed the notice of mechanic's lien, which it is sought to foreclose in this action, for the sum of $6,500. Although the entire extent of this work may not have been originally contemplated by the parties, it was possible for the court to find that a replastering of the ceiling was necessary, because, after it had been originally plastered, it was condemned, and it was necessary to remove the same and rewire the building to conform to the requirements of the New York Board of Fire Underwriters and the New York Fire Insurance Exchange.

It was also possible for the court to find that on June 27, 1907, the defendant lienors, McMurray Bros., entered into a contract for the structural steel work and materials for a balcony on the mezzanine floor, and on the 2d of August entered into another contract for the alteration of 12 elevator fronts, which contracts were substantially performed, and that, in addition thereto, between August 5th and September 7th, said defendant lienors performed certain necessary extra work in connection with the same, and that on that date there was due to them $7,038.67, for which they filed a notice of mechanic's lien, which is sought to be foreclosed herein. Although the lease did not specify what should be "an appropriate balcony," it was possible for the court to find that, though the parties at first contemplated to construct one of wood, the change was made to a steel construction to obviate objections to a wooden balcony on the part of the fire and building departments of the city of New York.

It was possible, also, for the court to find that between July 12th and September 24th defendant lienor, American Elevator Company, performed work and furnished materials upon said buildings of the value of $3,745.47, which was necessary to place said elevators in good condition, and that on the 24th of September, 1907, it filed its notice of mechanic's lien, which it seeks to foreclose in this action.

It was also possible for the court to find that between May 23d and September 20, 1907, the defendant lienor George Weiderman Electric Company did work and furnished materials for wiring for electric light, of the value of $3,950.93, and on September 25, 1907, filed its notice of mechanic's lien, which it seeks now to foreclose. And it was also possible for the court to find that between May 4th and September 19th defendant lienor Cross, Austin & Ireland Lumber Company furnished lumber used in connection with the alteration and improvements of said building of the value of $5,871.95, and on the 14th day of October, 1907, filed its notice of mechanic's lien. We do not say that the court must necessarily have found all of these facts, even upon the evidence that was before it. But it was quite possible

for it to do so, and as to most of the matters above stated, in the absence of any evidence upon the part of defendant owners contradicting the same, it might have been difficult for the court to find otherwise.

Upon such evidence, it was error for the trial court to conclude that none of the work performed or materials furnished by the various lienors was prepared or furnished for the improvement of the real property of the defendant owners with their consent. Consent involves a power of choice and the exercise of will respecting the subject thereof. That defendant owners prior to the execution of the lease had power to choose whether or not their property should be improved is quite clear. The expression of their will in the affirmative in regard thereto is found in the first instance in the lease itself. Eliminating for the moment from that clause of the lease above quoted the words "for the sum of fifteen thousand dollars ($15,000) to be paid to him by the parties of the first part, subject, however, to the conditions as hereinafter provided," we have not only the affirmation of acquiescence by the owners, but obligation on the part of the tenants enforceable by them. It seems absurd to say that one does not consent to the doing of an act by another which he seeks to compel him to do. This covenant on the tenant's part is supported, not only by the consideration arising from a presumption that the lease would not otherwise have been given and rent reserved at the sum fixed, which presumption is strengthened by the fact that the rent for the first two years is much less than for the subsequent years of the term, but also by the express provision that the payment of rent should be waived for the months of May, June, and July, 1907, being "a part of the period estimated for the making of repairs and improvements as hereinafter set forth, and equipping the premises for a department store." If Leininger had gone into possession of the demised premises and thereafter had refused to make either the specified alterations and improvements, or such others, if any, as might be necessary to equip the premises as a department store, would he have any defense to an action for the rent for the months in which it was specified that it should be waived? It seems to us clear that he would not, and it may be that, even if the entire rent had been paid, an action would lie to set aside the lease for failure of consideration, upon the ground that the damages resulting from the breach of the covenant to make these alterations could not be adequately determined at law. Within all the authorities, covenants such as these will establish consent. Otis v. Dodd, 90 N. Y. 336; Jones v. Menke, 168 N. Y. 61, 60 N. E. 1053; Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251; McLean v. Sanford, 26 App. Div. 603, 51 N. Y. Supp. 678; Tinsley v. Smith, 115 App. Div. 708, 101 N. Y. Supp. 382, affirmed 194 N. Y. 581, 88 N. E. 1133; Barnard v. Adorjan, 116 App. Div. 535, 101 N. Y. Supp. 502, :affirmed 191 N. Y. 556, 85 N. E. 1106. Does the inclusion of the words above referred to alter the relation of the parties? We think not under the circumstances here disclosed. If the owner agrees with the tenant that the latter may make certain repairs to or alterations in the demised premises, for which the owner agrees to pay the reasonable value thereof, or a specified sum reasonably approximating such

value, it may well be that the relation between them becomes solely such a contractual one as is covered by section 4 of the lien law (Laws 1909, c. 38 [Consol. Laws, c. 33]), where the liability of the owner to a subcontractor or materialman is limited to such sum as may be earned and unpaid on the principal contract at the time of filing the notice of lien or may be subsequently earned thereon. That is not this case. When improvements costing $60,000 are contemplated and the owner agrees on certain conditions to pay a small portion thereof, it is manifest that the work is not being done to improve the owner's property solely in consideration of his agreement to pay therefor, but that it is being done for the benefit of the owner because of the relations existing between the parties as landlord and tenant, and because the owner believes that as a result thereof his tenant will be in a better position to pay the rent agreed upon, and his reversion, both presently and in the future, will be increased in value without, or at least beyond, the expense thereof to him. If a landlord by agreeing with his tenant that the latter shall make alterations and improvements upon the buildings belonging to him toward the expense of which he shall contribute some sum, however trifling, is thereby relieved from liability to the contractor or materialman, an easy way has been discovered of defeating the purpose of the act, which has for its foundation the equitable principle that the owner whose property has been, with his consent, benefited by labor and materials, shall be liable for the same. Jensen on Mechanics' Liens, § 20. Under such circumstances, the liability of the owner is not limited by the amount which he agreed to pay on account thereof. Schmalz v. Mead, supra; Steeves v. Sinclair, 56 App. Div. 448, 67 N. Y. Supp. 776, affirmed 171 N. Y. 676, 64 N. E. 1125. That the owners contemplated the liability of their property to be subjected to the claims of lienors is indicated by the provision in the covenant relative to the discharge of liens thereon, which made their agreement to pay any sum to the tenant conditioned upon satisfactory evidence that there were no such liens.

We now consider the extent of the consent given. In respect to those matters specifically enumerated in the lease there can be no question. But consent may extend beyond that. This lease contained the provisions above quoted relative to requirements of the New York Board of Fire Underwriters, the New York Fire Insurance Exchange, the rules and regulations of the various departments and bureaus of the state and city government, including the board of health, department of buildings, and all other departments, boards, and authorities in said city. It is doubtless true that a general clause in a lease requiring compliance with the rules and regulations of a municipal department of health or buildings would not make an owner liable for repairs or alterations required thereby, and ordered by the tenant, which became necessary owing to his conduct subsequent to his entry on the demised premises. But where, in connection with the giving of a lease, it is contemplated that extensive changes and alterations shall be made by the tenant and the lease contains a provision similar to that above quoted, if, in connection with the work done, by reason of such rules and regulations, labor, and materials beyond

that originally contemplated become necessary in order to accomplish the desired result, the owner must be deemed to have consented to such additions. Under such circumstances the tenant is bound to so perform his work as to meet any additional exactions which the law might have imposed during its progress (McManus v. Annett, 101 App. Div. 6, 91 N. Y. Supp. 808), and what the landlord obligated the tenant to do in that regard the landlord must be deemed to have consented to. But the owner's consent does not necessarily stop here. If a lease contains a provision that no changes or alterations shall be made on the demised premises without the consent of the landlord, the subsequent consent to a particular improvement, to be done in a particular way, will not be deemed a consent to one much more extensive and done in a more extraordinary way, even though of a similar character, and mere knowledge of such change will not alone be evidence of the necessary consent on the part of the owner. De Klyn v. Gould, 165 N. Y. 282, 59 N. E. 95, 80 Am. St. Rep. 719; Hankinson v. Vantine, 152 N. Y. 20, 46 N. E. 292. But although in the first instance the agreement between landlord and tenant was that an improvement should be made in a particular manner, and that specified materials should be employed therefor, if subsequently the tenant changes the method of performance and the materials employed, which change increases the cost thereof, and the landlord is fully advised of these changes and their extent and does not object to the same, and not only acquiesces by not objecting, but to some extent encourages the tenant to proceed by suggesting that under certain conditions he will bear part of the additional expense resulting therefrom, from such conduct and statements the consent necessary to bind him under the law may be found. National Wall Paper Co. v. Sire, 163 N. Y. 122, 57 N. E. 293.

We shall not now discuss the question how much of the labor performed and material furnished by the various lienors may be deemed consented to within the rules which we have attempted to state. Some of it may not have been; some of it certainly was. It appears that some of the lienors had taken notes for a portion of the amount due from Leininger, and that some of these notes had been discounted and that some of them had been prosecuted to judgment, with fruitless results. It does not clearly appear how many of these notes had been taken up by the various claimants when their notices of lien were filed. Some of them apparently had not been. We do not now propose to consider what the effect of taking these notes was, the effect of recovering judgment upon a part of them, nor the situation of those lienors who had taken notes for a part of their claim, which had been discounted and were not in their possession when their notices of lien were filed, although subsequently taken up by them. We consider no questions that may arise as to the performance by the various lienors of their respective contracts. We have endeavored to lay down the general rules respecting that consent of landlords which would make them liable to those making contracts with their tenants or furnishing materials for the improvement of the demised premises under the circumstances disclosed in this case. Any other

questions that may arise can be better disposed of upon the new trial of this action, when the evidence may more fully disclose the necessary facts upon which to base conclusions respecting the same.

The judgment appealed from should be reversed and a new trial granted, and the order appealed from should be reversed and the motion granted, costs to abide the final award of costs. All concur.