(152 App. Div. 181.)
### McNULTY BROS. v. OFFERMAN et al.

(Supreme Court, Appellate Division, Second Department. July 25, 1912.)

1. APPEAL AND ERROR (§ 1195*)—REVERSAL—DUTY OF LOWER COURT—LAW OF CASE.

It is the duty of the trial court to apply to the facts established on a second trial, as far as applicable, the rule of law declared by the Appellate Division on a former appeal; such rule, until reversed, constituting the law of the case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. § 1195.*]

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MECHANICS' LIENS (§ 73*)—RIGHT TO LIEN—CONSENT OF OWNER.

Under Lien Law (Consol. Laws 1909, c. 33) § 3, giving a lien to a materialman who furnishes labor for the improvement of real property with the consent of the owner, the work of a contractor in putting up an ornamental plaster ceiling for a lessee under a lease obliging him to kalsomine or paint the walls and ceilings, which were then of flat plaster, in the absence of any negotiations preceding the lease or any act of the owner after the lease which in any way contemplated that the existing ceiling should be torn down and replaced by an ornamental ceiling, was not done with the consent of the owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87, 88, 90–102; Dec. Dig. § 73.*]

3. MECHANICS' LIENS (§ 93*)—RIGHT TO LIEN—FAILURE TO SUBSTANTIALLY PERFORM.

A lessee, who by the lease, obligated himself to place elevators in the building "in good condition," engaged an elevator company to do certain work for the sum of $3,750, and, because of the lessee's failure to make payments and his bankruptcy and the owner's repossession under judicial process, the work was stopped at a time when work valued at $1,200 to $1,600 remained to be done. The elevator company thereafter made no demand on the owners for access to the building in order to complete the work, and left some of the elevators in such condition that they could not be used. Held, that there was no substantial performance of the contract, so as to establish a lien as against the owner.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 124; Dec. Dig. § 93.*]

4. CONTRACTS (§ 303*)—PERFORMANCE—EXCUSE FOR NONPERFORMANCE.

As against a lessee, contracting for certain elevator work, his failure to make payments and his bankruptcy at a time when the work had not been substantially performed would excuse the contractor from further performance.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1409–1443; Dec. Dig. § 303.*]

5. MECHANICS' LIENS (§ 93*)—RIGHT TO LIEN—SUBSTANTIAL PERFORMANCE—EXCUSE.

A lien claimant, seeking to enforce his claim against an owner, who had consented to the doing of the work, must prove that the work has been substantially performed, or that the owner himself has prevented compliance with the contract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 124; Dec. Dig. § 93.*]

6. MECHANICS' LIENS (§ 73*)—IMPROVEMENTS BY LESSEE—CONSENT OF OWNER.

Where a lessee, contrary to the terms of the lease, took down a plaster ceiling in the leased building, thus exposing electric wiring constructed in a manner not then permitted by the Board of Fire Underwriters in new work, and the board notified the owner that a complete rewiring was required, and the owner referred the board to the lessee and also called upon the lessee to comply with the order on the ground that such compliance was obligatory under the covenants of the lease, such work, to the extent required by the order of the board, was done with the consent of the owners, under Lien Law (Consol. Laws 1909, c. 33) § 3.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87, 88, 90–102; Dec. Dig. § 73.*]

7. MECHANICS' LIENS (§ 73*)—RIGHT TO LIEN—CONSENT OF OWNER.

Where a lease obligated the lessee to put a new floor on the first floor and basement of the building and upon a balcony to be constructed, and to extend certain floors of the building out to the front of the building,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

work to the extent so provided by the lease was done with the consent of the owners.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87, 88, 90–102; Dec. Dig. § 73.*]

8. MECHANICS' LIENS (§ 280*)—ACTION FOR ENFORCEMENT—ADMISSIBILITY OF EVIDENCE.

Where a lien claimant furnished material for alterations and improvements, part of which was used for specific work consented to by the owner, the exclusion of evidence to show the purposes for which the material furnished had been used in the building was error.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 557–563; Dec. Dig. § 280.*]

9. MECHANICS' LIENS (§ 290*)—ENFORCEMENT—FINDINGS—INCONSISTENCY.

Findings, in a proceeding to enforce a mechanic's lien, that claimant had delivered materials of a certain value which were actually used in the improvement and alteration of the building, and that they were furnished with the knowledge and consent of the owner and to carry out the provisions of a lease of the premises, were inconsistent with a judgment dismissing the claim.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 591–597; Dec. Dig. § 290.*]

10. MECHANICS' LIENS (§ 73*)—RIGHT TO LIEN—CONSENT OF OWNER—PROVISIONS OF LEASE.

A lease provided that the lessee should erect an "appropriate balcony extending around the walls on the first floor and divided into suitable rooms," the intention being that it should be of wood, but on finding that it would not be proper to use a wooden balcony because of requirements of the Board of Fire Underwriters which would interfere with or defeat its use, the contractor for the lessee constructed a steel balcony and performed items of extra work relating to its construction, and also constructed metallic entrances to elevators. *Held*, that the work on the metallic elevator entrances was not done with the consent of the owner as evidenced by the lease, but that work on the balcony and the extra work properly relating to it was done with the owner's consent.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87, 88, 90–102; Dec. Dig. § 73.*]

Appeal from Special Term, Kings County.

Action by McNulty Brothers against Carsten Henry Offerman and others to enforce mechanics' liens claimed by plaintiff and defendants George Weiderman Electric Company, American Elevator Company, Cross, Austin & Ireland Lumber Company, and Robert R. McMurray & Brother. From a judgment of Special Term dismissing the complaint and the claims of defendant lienors, plaintiff and defendants George Weiderman Electric Company, American Elevator Company, Cross, Austin & Ireland Lumber Company, and Robert R. McMurray & Bro. appeal. Judgment affirmed as to plaintiff and defendant-appellant the American Elevator Company, and reversed and new trial granted as to defendants-appellants George Weiderman Electric Company, Cross, Austin & Ireland Lumber Company, and Robert R. McMurray & Bro.

See, also, 141 App. Div. 730, 126 N. Y. Supp. 755; 142 App. Div. 946, 127 N. Y. Supp. 1131.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William W. Robison, of New York City, for appellant McNulty Bros.

W. E. Benjamin, of New York City, for appellant George Weiderman Electric Co.

Manice & Perry, of New York City, for appellant American Elevator Co.

Robert H. Wilson, of Brooklyn, for appellants Robert T. McMurray & Bro. and another.

William H. Hamilton, of New York City (Norman C. Conklin, of New York City, on the brief), for respondents.

CARR, J. This action was brought by materialmen and contractors to charge certain real property situated in the borough of Brooklyn with mechanics' liens for work done and materials furnished in the doing of such work upon the premises in question. The contracts for the furnishing of the materials and the doing of the work were not made with the owners of the real property, but with the lessee thereof, and it was sought to impose the burden of the amounts remaining due and unpaid for such work and material upon the property in question, on the claim that the owners thereof had consented to the doing of the work and the furnishing of the materials within the meaning of section 3 of the Lien Law. The judgment now before this court was entered upon a second trial of the action. On the first trial the trial court dismissed the claims of the lienors and found in favor of the defendant owners, on the ground that the lienors had failed to establish that the work was done or the materials furnished on the consent of said owners. That judgment was rendered at the close of the proofs by the respective lienors, and without any proofs from the defendant owners. On an appeal from that judgment to his court, it was reversed, and a new trial was granted. McNulty Brothers v. Offerman, 141 App. Div. 730, 126 N. Y. Supp. 755.

At the second trial, the proofs offered by the lienors and by the owners of the property were taken by the trial court, and findings of fact and conclusions of law were made thereon, and a judgment entered in favor of the defendant owners dismissing the complaint of the plaintiff and the claims of the various defendant lienors, as set forth in their respective answers. It is urged on this appeal that the learned trial court, on the second trial of this action, disregarded the rule of law which was declared by this court on the former appeal to be applicable to the causes of action involved in this controversy. It is asked, therefore, that the judgment entered on the second trial be reversed. It is apparent from a reading of the opinion handed down by the learned trial court after the second trial of this action, and from the findings of fact made by the trial court in support of its judgment, that it did not apply to the respective controversies involved in this action the rule of law declared by this court on the former appeal, in many substantial particulars, in the judgment then rendered and now appealed from.

[1] It was the duty of the learned trial court to apply to the facts established before it on the second trial, as far as applicable, the rule

of law declared by this court on the former appeal, for such rule, until reversed by the Court of Appeals, constituted the law of the case and was not subject to review by the trial court on the new trial. We think this error was unconscious rather than deliberate. An examination of the testimony shown by the record, and of the findings of fact made by the trial court, discloses, however, that this mistake on the part of the learned trial court did not pervade entirely the judgment which it rendered. It becomes necessary, therefore, to examine the proofs offered in relation to the various claims of lien, to ascertain in how far such liens were established at the trial in accordance with the law of the case as declared on the former appeal in this action.

It appears that the owners of the property in question made a lease thereof for a term of 10 years to one Leininger, who in turn assigned the lease to a corporation known as the Kingston Realty Company, which was but himself in another guise. The building in question had been built for use and actually used as a large department store. Leininger's scheme was to lease the premises for a long term of years, to make various alterations and improvements therein, and to organize a corporation to conduct in the building the business of a department store. Before the lease was made, various negotiations took place between him and the owners of the building, in which he suggested a very large number of alterations and improvements which he desired to have made, partly at his own expense and partly at the expense of the owners. These negotiations finally culminated in a written lease. At the time the lease was made, he had outlined certain specific alterations and improvements which were roughly estimated at a cost of about $60,000, and which, according to the uncontradicted testimony in the case, should cost not less than $50,000. The lease as entered into contained a clause as follows:

"And the party of the second part further covenants and agrees that for the sum of fifteen thousand dollars ($15,000) to be paid to him by the parties of the first part, subject, however, to the conditions as hereinafter provided, he will during the first six months of the term make the following improvements and repairs in and to the building known as Nos. 503 to 513 Fulton street and Nos. 234 to 248 Duffield street, same to be done in a good and workmanlike manner in all respects, under the supervision of a competent architect, to be approved by the parties of the first part, viz., new maple wood flooring on the first floor and basement; appropriate balcony, extending around the walls on the first floor, and divided into suitable rooms; a connection with the subway station from the basement, if permit for the same can be obtained; bringing the second and third floors out even with the Fulton street front of the building; a new cloak and suit room with retiring room for ladies on the second floor; all show windows changed and improved; kalsomining or painting all walls and ceilings; painting all woodwork inside and outside, including all pillars; cleaning entire fronts of building; repairing roof and placing elevators and all plumbing in good condition throughout; it being understood and agreed that said fifteen thousand dollars ($15,000) shall be paid as follows, and only upon the following conditions, viz.: (1) That the party of the second part has theretofore paid all installments of rents as they became due hereunder, and faithfully kept and performed all the other terms and conditions hereof for the period of at least nine months, and (2) that there be produced to the parties of the first part a certificate of the architect showing that all said improvements and repairs have been done

and performed in a good and workmanlike manner and within the period above specified and that all the cost and expense thereof has been actually paid and satisfied by the party of the second part; together with proof by search and certificate of the clerk of Kings county, showing that no liens for any work or materials employed in connection with said improvements and repairs have been filed against the premises or any part thereof and remain unsatisfied; it being understood that the parties of the first part may (but only at their election, however) out of said fifteen thousand dollars ($15,000) or any part thereof, and on account of the same pay off and discharge any lien or alleged lien that may be so filed. All improvements and repairs to the buildings shall belong to the parties of the first part as soon as made.

"The parties of the first part covenant and agree that the party of the second part on paying the said rent as herein provided and performing the covenants as aforesaid, shall and may peaceably and quietly have and hold the said demised premises for the term aforesaid."

After the lease was made, Leininger entered into possession of the premises, and thereupon he set about making a very considerable number of alterations and improvements in the building in question It was held by this court on the former appeal that, to the extent of the alterations or improvements specified in the foregoing clause of the lease, the owners were to be deemed to have consented thereto within the meaning of section 3 of the Lien Law. It was intimated in the opinion of this court that the consent was not restricted necessarily to the improvements and alterations so specified, but might extend to such other work as by fair intendment should be embraced within any covenants of the lease by which the lessee was placed under obligation to do any specific work, or make any specific improvement which resulted in the benefit of the property in question.

[2] We shall take up, therefore, for consideration, each of the respective claims of lien on its own merits. The plaintiffs' claim rests upon work done and materials furnished in the construction of a new ceiling on the first floor of the building in question. This new ceiling was an elaborate ornamental plaster ceiling with panels. At the time the lease was made, the ceiling on the first floor of the building was of flat plaster. So far as the specific provisions of the lease are concerned, the only obligation placed thereby on the lessee in relation to the ceilings in the building was to kalsomine or paint them. There was no consent given by the lease itself, or in any negotiations preceding the lease, or by any act of the defendant owners after the lease, which in any way contemplated that the existing ceiling on the first floor should be torn down and supplanted by the costly and elaborate panel plaster ceiling which was furnished by the plaintiffs. The lessee did not decide finally to do this work until some time after he had entered into possession of the premises. We think that the findings of the trial court that this work of putting up a plaster ornamental ceiling was not shown to have been done with the consent of the owners to such extent as to render them liable for the cost thereof under section 3 of the Lien Law as aforesaid.

[3, 4] By the provisions of the lease as above quoted, the lessee was obligated to place the elevators in said building "in good condition." And to this extent, according to the law of this case as applied in our former decision, the owners had consented to the doing

of such work. The lessee entered into a contract with the defendant lienor, the American Elevator Company, to do certain work upon the elevators of the building. This work was to be done for the sum of $3,745.57. The work was not completed, the lessee failing to make proper payments according to the terms of the contract, and before the completion of the work he went into bankruptcy. The sheriff took possession of the premises occupied by the lessee under judicial process and closed the premises. The American Elevator Company failed thereafter to make any demand upon the owner of the premises for access to the building in order to complete the work in question. At the time it stopped work, the amount of work remaining to be done was of the value of from $1,200 to $1,600. There was therefore no substantial performance of this contract, although as against the lessee his failure to comply with the terms of the contract would have excused further performance upon the part of this defendant lienor.

[5] Yet when the contractor or lienor seeks to enforce his claim against the real property in question, on the ground that the owner thereof, who was not privy to any contract with him, had consented to the doing of the work, it is necessary that such contractor or lienor should prove that the work in question had been substantially performed, or that the owner himself had prevented compliance with the contract. N. Y. Elevator Supply Co. v. Bremer, 74 App. Div. 400, 77 N. Y. Supp. 509, affirmed 175 N. Y. 520, 67 N. E. 1086.

The learned trial court found, and properly enough, upon the only evidence submitted to it, that the contract of this defendant lienor had not been performed substantially, and that it had made no offer to the owners to complete the contract, nor had it made any demand upon the owners for access to the building for that purpose. At the time this defendant lienor stopped its work, it had progressed so far thereon in the work of overhauling the elevators of the building that many of the elevators were dismantled and put out of use, most of them being tied to the ceiling on the top floor and in no usable condition for the owners of the building when they resumed possession thereof, after an order in summary proceedings dispossessing the lessees therefrom for failure to pay rent overdue. While the learned trial court found that this work on the elevators was done without the consent of the owners of the building, yet the other findings made on the evidence, and justifiably made, were such as to prevent the enforcement of any claim of lien on the premises in question as against the owners in favor of this defendant lienor.

[6] The defendant lienor, Weiderman Electric Company, did certain work in the way of installing new electric connections in the building, making new outlets on the various floors of the structure, and increasing the supply of electric light appliances throughout the building. This claim for a lien against the premises in question is based upon the contention that the work done by it was required to be done by an order of the New York Board of Fire Underwriters, and that by the covenants of the lease it was obligatory upon the tenant to comply with all orders of the New York Board of Fire Underwriters in regard to appliances used on the premises, and that, by

imposing such a covenant upon the lessee the owners had consented to the doing of the work in question. It was said in the opinion of this court on the former appeal that to any work done under such circumstances the owners must be deemed to have consented, within the meaning of the section of the Lien Law as aforesaid. The learned trial court found that the owners had not consented to this work, and to this extent it has failed to apply the law of his case as declared by his court on the former appeal. It is urged, however, that the work done by the defendant lienor Weiderman Electric Company was the result of the tearing down of the ceiling on the first floor, and was caused not so much by the order of the New York Board of Fire Underwriters, as it was by a condition brought about by the lessees which resulted in the intervention of the Board of Fire Underwriters. It appears from the proofs taken as to this claim that the electrical wiring of the building in question had been installed therein about 18 years ago, and that the system of installation was not such as was now permitted by the Board of Fire Underwriters in new work. There was proof given that parts of the system had deteriorated in many important particulars.

No doubt the action of the Board of Fire Underwriters on this particular occasion was inspired by facts which came to their attention after the ceiling of the first floor was taken down by the lessee. At the same time, however, we have the circumstance that the said board thereupon gave notice to these owners of the building, by which the owners were required to make a complete reinstallation of new feed wires and of branch circuits in all parts of the building, except the fourth and fifth floors. This notice was in writing, and when it was received by the owners they turned it over to their attorneys, who in turn notified the Board of Fire Underwriters that the matter had been referred to the lessee. These attorneys communicated with the lessee in writing, calling upon him to comply with the directions of the Board of Fire Underwriters, on the ground that such compliance was obligatory upon the lessees under the covenants of the lease. To the extent of making the new installation of feed wires and branch circuits in the floors of the building specified, such work must be deemed to have been within the consent of the owners according to the former opinion of this court. This work was required, not alone for the benefit of the lessee, but for the benefit of the owners as well. A failure to comply with his direction of the underwriters would result in a probable withdrawal of the insurance on the building, or at least in an increase of the insurance rates, as is commonly known. However, the contract with the Weiderman Electric Company seems to have embraced more work than the new installations required by the Board of Fire Underwriters, and to have covered many items required by the lessee for his own purposes, and as to which there was no consent given by the owners under the terms of the lease, and as to such items there is no right of lien against the premises in behalf of the contractors. What part of the claim is chargeable against the real property may be determined on a new trial.

[7] It appears by the provisions of the lease above quoted that

the lessee had become obligated to put a new maple wood floor on the first floor and basement of the building and upon a balcony, which was provided to be constructed in the first floor of the building. It was likewise provided therein that certain of the floors of the building which did not extend out to the front of the building should be carried to the front thereof. To the extent of doing this work, thus provided for in the lease, the owners must be deemed to have given their consent.

[8] The defendant lienor the Cross, Austin & Ireland Lumber Company furnished a considerable amount of lumber for use in making alterations and improvements in the building. Their claim of lien was disallowed. On the trial of the action, this lienor sought to show the purpose for which the material it had furnished had been used in the building. Acting upon some momentary theory, the learned trial court refused to allow this lienor to make such proof. It was clearly entitled to show that the materials for which they made a claim of lien were either in whole or in part used for the specific work for which the owners had given consent under the terms of the lease. The exclusion of this evidence when offered on the part of the lienor was error. The learned trial court found that some of this material was used for shelving and counters for the tenant. Just to what extent this use went does not not appear in evidence. It seems clear, however, that some part of this material was used for the purpose of making floors under the provisions of the lease on the first floor and basement and balcony of the building, and the lienor should have been allowed to establish, if it could, the extent to which this use went.

[9] The learned trial court, however, found by the seventy-second, seventy-third, seventy-fourth, and seventy-fifth of the findings proposed by the defendant lienors that the Cross, Austin & Ireland Lumber Company had delivered materials at the building of the reasonable value of $5,871.95; that said materials were actually used in and upon the building in the improvement and alteration thereof; that they were furnished with the knowledge and consent of the owners of said premises; and that they were furnished and used for the purpose of carrying out the provisions of the lease aforesaid between the tenant Leininger and the owners of said premises. Perhaps these findings thus referred to were inadvertently made. They certainly were inconsistent with the findings made on the same subject-matter in the formal decision of the court. We do not feel justified in disregarding these specified findings as merely inadvertent, though we may suspect they were. As they stand, they are certainly inconsistent with the judgment of the trial court, and the appellant is entitled, according to long established rules of law, to urge such inconsistencies for the purpose of reversing this judgment as against it. City of Buffalo v. D., L. & W. R. R. Co., 190 N. Y. 84, 82 N. E. 513, 16 L. R. A. (N. S.) 506; Nickell v. Tracy, 184 N. Y. 386, 77 N. E. 391.

While it is apparent that some of the lumber furnished by this lienor was used in the building in question for the purpose to which the defendant owners had given formal consent by the provisions of

the lease, yet just to what extent this use went it is impossible to determine from an examination of the present record. The consent of the owners in regard to the use of the lumber certainly did not extend to any use thereof for any other purpose than that embraced properly within the consent as evidenced by the covenants of the lease, and certainly did not go to any use of any part thereof for shelving and counters as trade fixtures of the tenant.

[10] We are now brought to a consideration of the lien claimed by the defendant lienors McMurray & Bro. This lien is made up of three subdivisions. One part thereof is for the construction of a steel balcony along the walls of the first floor of the building, another part arises from the placing of ornamental metallic entrances to the various elevators of the building, and the third, and very much smaller part, consists of an item for extra work in connection with the erection of the balcony and the extending of certain floors to the front of the building. So far as the part of the claim which relates to the ornamental metallic entrances to the elevators is concerned, we agree with the learned trial court that such work was not within the consent of the owners as evidenced by the lease, and that it is not the subject of a lien against the real property in question. As to the balcony, however, we think the work done was within the consent of the owners. The lease called for the erection of "an appropriate balcony" divided into rooms. According to the proofs at the trial, it was intended when the lease was made that the balcony should be of wood; but it was found that under the rules of the Building Department of the City of New York it would not be proper to use a wooden balcony because of certain requirements of said department which would interfere very materially with the intended use thereof, and defeat largely the practical purposes of the erection of the balcony. The language in the lease referring to the balcony is not very definite; but it is broad enough to cover such a balcony and method of construction thereof as would be "appropriate" to the building itself and to the requirements of the various departments of the city of New York which had control over the erection and use thereof. Therefore, as we have stated, we think the contract made for the erection of the balcony in question was within the consent of the owners evidenced by the lease. As to the item of extra work, if this work was done properly to carry out the provisions of the contract as to the erection of the balcony and the extension of certain floors to the front of the building on Fulton street, this item was likewise within the consent of the owners as evidenced by the lease.

The views here expressed require that the judgment of the trial court be affirmed, with costs as to the plaintiff-appellant, and the defendant-appellant the American Elevator Company; and reversed as to the defendants-appellants Weiderman Electric Company, Cross, Austin & Ireland Lumber Company, and McMurray & Bro.; and that a new trial be granted as to said last-mentioned appellants, costs to abide the final award of costs.

THOMAS, WOODWARD, and RICH, JJ., concur. JENKS, P. J., not voting.