(174 App. Div. 218)

MARSH et al. v. LEMON THOMSON REALTY CORP. et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1916.)

1. MECHANICS' LIENS ⊂⊃73(7)—RIGHT TO LIEN—AGREEMENT.

Under Lien Law (Consol. Laws, c. 33) § 3, providing that where a lienor has contracted with a lessee, but not with the owner, the owner's interest in the property may nevertheless be held subject to a lien, although express consent by the owner is not necessary to charge the property with the lien, and may be implied from his conduct indicating willingness to have the improvements made, consent must be affirmative,

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and not a mere vacant or neutral attitude, and where a lessor consented to the installation of an electric lighting system by the lessee in addition to that provided for in the lease for which the lessor was to pay, expressly conditioned, to the knowledge of both the contractor and lessee, upon the owner being exempt from all liability, the contractors may not be heard to say that they furnished labor and materials upon the faith and credit of the lessor, and cannot enforce a lien against the lessor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 101; Dec. Dig. ☞73(7).]

2. MECHANICS' LIENS ☞137(1)—PROCEEDINGS TO PERFECT—NOTICE TO OWNER—VALIDITY.

Under Lien Law, § 9, requiring the notice to state the name and interest of the owner of property so far as known, error in stating the name of the former owner in a notice of mechanic's lien did not affect the validity of a lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 225, 226; Dec. Dig. ☞137(1).]

3. MECHANICS' LIENS ☞132(8)—TIME OF ACCRUAL OF LIEN—INTERRUPTION OF WORKS.

Under the Lien Law, requiring a mechanic's lien to be filed within 90 days after final performance of the work, where the work under a contract for installation of a lighting system in a moving picture theater was practically completed and the theater opened on September 3d, although alleged final work, consisting of grounding the system by connecting one of its wires with a water pipe, was omitted by inadvertence and not performed until December 22d, the contract having been practically completed, entitling the contractor to recover the contract price, less the omission, on September 3d, a mechanic's lien filed December 22d was not filed within 90 days, and contractor's right of recovery was barred.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 200; Dec. Dig. ☞132(8).]

Appeal from Trial Term, Warren County.

Action by Clifford M. Marsh, William H. La Mont, and Robert Twiss, doing business under the firm name and style of La Mont & Twiss, against the Lemon Thomson Realty Corporation and another. From a judgment dismissing the complaint as to the named defendant, plaintiffs appeal. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Daniel F. Imrie, of Glens Falls, for appellants.
Frank D. Morehouse, of Glens Falls, for respondent.

LYON, J. This is an action to foreclose a mechanic's lien. In June, 1914, the defendant corporation entered into a 15-year lease with the defendant Stichman of a store and basement owned by it in the city of Glens Falls, N. Y. By the terms of the lease the premises were to be used by the lessee for the purpose of conducting a general moving picture or mercantile business, and not otherwise. The lease provided for somewhat extensive repairs and alterations of the premises, to be made by the owner; but the only provision regarding installing an electric lighting system was that which stated that the owner should rewire the ceiling of the store for electric lights. The lessee was not required by the terms of the lease to make any changes or repairs whatever to the premises. However, the lease provided

that all such changes and repairs as might be required to be made, other than those specified in the lease to be made by the owner, should be made by the lessee, and that all moving picture apparatus installed in the building should be approved by the Board of Insurance Underwriters, so as not to unnecessarily increase the rate of insurance upon the building. The lease gave the lessee the privilege of making any necessary alterations or repairs during the term of the lease, which should not injure or materially change the buildings or premises leased.

The lessee elected to occupy the premises with a moving picture theater. Thereafter the president of the defendant owner, two of the plaintiffs, and the lessee, met at the building to consider the installation of the necessary electric lighting system. It was then stated by the owner and the lessee, and fully understood by the plaintiffs, that the only expense to be borne by the owner was in connection with the lighting of the ceiling and side walls, and that the expense of installing the balance of the electric system was to be borne by the lessee. The amount to be paid by the owner for its portion of the work was figured out by the plaintiffs, and agreed upon between them and the owner as $109. The president of the owning corporation testified that at this time he said to the plaintiffs:

"This is what we pay for, and we have nothing more to do. We will do nothing more, and pay for nothing more."

This testimony is quoted by the court in his memorandum of decision, and was not disputed or questioned on the trial. The plaintiffs made an estimate of the expense of installing the portion of the system to be paid for by the lessee. The original plan contemplated connecting the portion of the system to be installed by the owner, and that to be installed by the lessee, by separate wires and conduits leading from the supply wire. At the suggestion of the plaintiffs that, by substituting a somewhat heavier single wire and pipe in the place of the two wires and pipes, the expense could be lessened, the president of the owner stated that the owner was satisfied to pay $109 for its portion of the work, and said to the plaintiffs: "Go ahead and save Stichman all you can." The proposed substitution was apparently made. The owner duly paid the sum of $109 agreed to be paid by it. The lessee failed to pay in full for his portion of the work and materials, and on December 22, 1914, the plaintiffs filed a notice of lien as to the balance unpaid. In this notice the plaintiffs mistakenly named a former owner as the then owner of the premises, but on February 25, 1915, the plaintiffs filed a second notice of lien, which they designated as an amended or corrected notice of lien, naming the defendant corporation as the owner of the premises.

[1] The basis of the plaintiffs' claim of right to charge the interest of the defendant corporation in the leased property with the payment of the balance unpaid by the lessee upon its contract is section 3 of the Lien Law (Consol. Laws, c. 33; Laws 1909, c. 38), which provides:

"A contractor * * * who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner * * * shall have a lien for the principal and interest of the value

or the agreed price of such labor or materials upon the real property improved * * * from the time of filing a notice of such lien as prescribed in this article."

Express consent by the owner is not necessary in order that the property may be charged with the lien. A requirement in the contract that the lessee shall make certain improvements has been held to be a sufficient consent by the owner under the statute to charge his property with claims which accrued in making such improvements. Jones v. Menke, 168 N. Y. 61, 60 N. E. 1053. Consent may be implied from the conduct of the owner indicating willingness that the improvements be made. National Wall Paper Co. v. Sire, 163 N. Y. 123, 57 N. E. 293; Wahle, Phillips Co. v. Fifty-Ninth Street-Madison Avenue Co., 153 App. Div. 17, 138 N. Y. Supp. 13; affirmed, Wahle, Phillips Co. v. German Theatre, Inc., 214 N. Y. 684, 108 N. E. 1110. It was held in Spruck v. McRoberts, 139 N. Y. 193, 34 N. E. 896, where the owner had knowledge that improvements were being made, and did not forbid or attempt to prevent the making of them, and the contractor placed the improvements upon the property after having been informed that the contractee was not the true owner of the property, the contractor could not enforce a lien for the labor and materials furnished by him. Consent is not a mere vacant or neutral attitude. It is affirmative in its nature. De Klyn v. Gould, 165 N. Y. 282, 287, 59 N. E. 95, 80 Am. St. Rep. 719.

It was held in McNulty Bros. v. Offerman, 164 App. Div. 949, 149 N. Y. Supp. 375, that where the owner refused to bear any of the expense for electric wiring and fixtures, and the lessee for his own purposes contracted therefor, there was no consent or authority by the owners for the outlay, and that the item therefor must be stricken from the lien. The facts of the case are fully set forth upon a former appeal (152 App. Div. 181, 190, 137 N. Y. Supp. 27), where the same conclusion was reached. It was held in Conant v. Brackett, 112 Mass. 18, that an agreement to make repairs and alterations, made with a lessee who has covenanted in the lease to make all necessary repairs and improvements at his own expense, does not subject the estate of the lessor to a mechanic's lien.

In the case at bar there was no requirement in the lease that the tenant should perform labor and furnish materials in connection with an electric lighting system. While subsequent to the making of the lease the owner consented to the tenant so doing, such consent was little more than mere passive acquiescence, or, as one of the plaintiffs testified, that the president of the owner did nothing that he knew of more than to watch them working there and see the work that was being put in. Furthermore, the owner's consent was expressly conditioned, to the knowledge of both the plaintiffs and the tenant, upon the owner being exempt from all liability on account thereof. When the plaintiffs and the tenant availed themselves of the owner's consent, they did so with the condition attached to it, and the plaintiffs cannot now be heard to say that they performed the labor and furnished the materials upon the faith and credit of the owner. Under the circum-

stances, to allow the enforcement of such a claim against the owner would be grossly unjust and inequitable.

In Wahle, Phillips Co. v. Fifty-Ninth Street-Madison Avenue Co. supra, much weight was given by the court to the fact that the fixtures were to be permanently attached to and form part of the realty, and this was held to be an important consideration in deciding whether such installation constituted the furnishing of materials and the performance of labor for the improvement of real property within the contemplation of section 3 of the Lien Law. In the case at bar the evident intention of the parties thereto was that the fixtures installed by the tenant should remain his property, as by the lease the tenant assigned to the owner, as security for the payment of rent during the first five years of the lease, all of his interest in the fixtures and property used on the premises in connection with the theater or mercantile business. Whether or not these fixtures, consisting of 160 lights on the front of the building, those used in the wiring of the machine, and a light in the office, remained real or personal property, they appear to have been of little material benefit to the owner. Following the tenant vacating the premises in December, 1914, with rent unpaid, and the premises being occupied for one month by another moving picture show, which failed, the premises seem to have remained vacant down to the time of the trial.

[2, 3] Furthermore, I think the plaintiffs' right of recovery is also barred by their failure to file their lien within the statutory period of 90 days after the final performance of the work. The trial court found that the work done and materials furnished for defendant Stichman were completed on or about September 3, 1914; also that the lien was filed more than 90 days after the completion of the work and the furnishing of the materials. In this we think the trial court was correct. The error in stating the name of the owner in the notice filed December 22d did not affect the validity of the lien. Lien Law, § 9. Hence it was effective if the work was completed within 90 days preceding December 22d, and not of the following February, when the amended lien was filed. One of the plaintiffs testified that the work was hanging along until just about the time the theater opened; that they looked the work all over in the afternoon and tested everything up to the night he opened; that the work was all completed at about the same time and before Stichman opened up. The theater opened September 3d.

The plaintiffs seek to fix the period of the completion of the work as just prior to filing the lien on December 22d. Such alleged final work consisted simply of grounding the system, which was accomplished by connecting one of its wires with a water pipe by means of single wire. This was a very simple operation, and involved but a slight expense. The trial court found, and we think correctly, that this work did not furnish sufficient ground upon which to base the claim that the work was not complete until such connection had been made. One of the plaintiffs testified that without the ground wire attachment the contract was practically complete. The work related to both contracts. The omission to attach the ground wire prior to

the opening of the theater September 3d was plainly an inadvertence, and the theater ran four months without it.  The ground wire connection was then made, not at the request of either the owner or the tenant, but, as the plaintiffs claim, at the direction of an inspector, in order to comply with the rules of the Underwriters' Association and minimize the danger of having short circuits.  The tenant testified that the work of attaching the ground wire was done December 22d, about a half hour before he abandoned the premises, after having occupied them four months and paid one month's rent.  The owner claims that attaching the ground wire was an afterthought upon the part of the plaintiffs, done for the purpose of extending the time within which to file a lien.

Whether this was so or not is immaterial.  Assuming that this work was embraced in the contract, the contract had at least been practically completed September 3d.  The lien could have been filed the following day, and its enforcement could not have been defeated upon the ground that the contract had not been fully performed.  Literal performance was not a condition precedent to the right to enforce a lien.  It has been repeatedly held that where a contractor has intended to comply with a contract, and has succeeded, except as to some slight things, omitted by inadvertence, he will be allowed to recover the contract price, less the amount necessary to fully compensate the owner for the damages sustained by the omission.  Woodward v. Fuller, 80 N. Y. 312; Van Clief v. Van Vetchen, 130 N. Y. 571, 29 N. E. 1017, Desmond-Dunne Co. v. Friedman-Doscher Co., 162 N. Y. 486, 56 N. E. 995.

We think that the judgment of the trial court dismissing the complaint as against the defendant corporation as owner, with costs, and granting judgment against the lessee for the unpaid balance, with interest and costs, was just and should be affirmed.

Judgment unanimously affirmed, with costs.  All concur.