(32 Misc. Rep. 470.)

## BERLINER v. PIQUA CLUB ASS'N.

(Supreme Court, Special Term, New York County.    September, 1900.)

1. FIXTURES—WHAT CONSTITUTE.
    Chandeliers, electrical apparatus, and a filter, placed in a building owned by a club to supply light, heat, and pure water to the members, and so used, are fixtures, and covered by a mortgage of the premises; the design being to connect them with the building for the purpose of making it useful for the objects of its construction, so long as their utility remained, or for their life.

2. SAME—ARTICLES UNDER SIDEWALK.
    Articles are none the less fixtures, and covered by a mortgage of a building and lot, because placed in a vault constructed by the owner of the premises with the permission of the city, under the sidewalk.

3. RECEIVERS—DISCHARGE—EQUITABLE LIEN OF CREDITOR.
    Title to property which might, but was not, obtained by the receiver of an insolvent corporation for the benefit of its creditors, remains in him notwithstanding his discharge; and a creditor of the corporation, by thereafter discovering that the receiver had a right to the property, acquires no equitable lien on it, so as to entitle him to apply it to his individual claim.

Action by Harry Berliner against the Piqua Club Association. Judgment for defendant.

John Delahunty, for plaintiff.

Carter, Hughes & Dwight, for defendant.

RUSSELL, J.    The plaintiff, claiming under assignments of judgments against the Manhattan Athletic Club of New York City, seeks to recover of the defendant the value of electrical and gas chandeliers and fixtures, boilers, dynamo, electrical apparatus, filter, and generic articles, placed in the Manhattan Athletic Club Building on Madison avenue, New York City, to supply light, heat, and pure water for the club members in their use of the building for athletic and social club purposes. The defendant claims as second grantee from the purchaser at the foreclosure sale under the mortgage upon the realty, and also by the passive delivery to that purchaser from the receiver, who administered upon the property of the club under proceedings taken by which the corporation was dissolved. The Manhattan Athletic Club was incorporated in 1878, and executed on the 25th of May, 1889, to Adrian Iselin, Jr., and Columbus O'Donnell Iselin, trustees, a mortgage to secure $400,000 on the lots of land on the easterly side of Madison avenue, between Forty-Fourth and Forty-Fifth streets, with the buildings and improvements then or to be erected, and the hereditaments and appurtenances. On the 4th of June, 1890, and the 30th of July, 1890, the department of public works gave permits to the club to excavate under the sidewalk, and construct a vault for the uses and purposes of the club. Between the 1st day of July, 1890, and the 1st day of January, 1891, the club placed in the club house their gas and electric light fixtures, and about the same time put a large iron filter in the vault under the sidewalk. About the 1st of January, 1892, the club also placed in the vault two boilers, a dynamo, and engine. All of the property so placed in the club house or in the vault has

remained at the same places ever since. In August, 1893, the sale under the mortgage to Adrian Iselin for $456,000 was confirmed. On the 10th of January, 1896, Iselin conveyed to John D. Adams. September 1, 1896, Adams conveyed to the defendant, who has since been in possession. In January, 1893, five of the judgments were recovered against the Manhattan Athletic Club, and later, on the 28th of January, 1893, in a proceeding for a voluntary dissolution of the club, a temporary receiver was appointed and qualified. On the 7th of November, 1895, the temporary receiver's account was passed upon by the court. He was discharged as temporary receiver, and appointed permanent receiver. On the 7th of May, 1896, the Manhattan Athletic Club was dissolved by an order of this court. On the 21st of September, 1896, the permanent receiver was discharged. The receiver reported that he had sold all of the personal property belonging to the club. It is not claimed that he sold or received anything for the property here in controversy, but he apparently regarded it as an essential part of the realty, and subject to the lien of the mortgage.

It is evident that such part of the appliances in question as might be ornamental were designed in harmonious symmetry for the structure which was being erected, and those which were useful for light, heat, or other purposes were also planned to adequately serve the uses of that particular building, and no other, and that all of the things so designed and planned were intended for permanent association with the building for the purposes in the indefinite future that the structure itself was intended to provide. Necessarily, these articles could not last as long as the building, but the evident design was to connect them with the building for the purpose of making that building useful for the objects of its construction so long as their utility remained, or for their life in the form of their construction. The courts have advanced in the last half century from the inspection as to how firmly articles have been attached to the realty, in the ascertainment as to whether they pass with it by conveyances, to the more important consideration of union in usefulness for the purposes of the structure and permanence of association. A statue or a sun dial on a lawn, though not attached except by gravity, is a part of the realty covered by a general mortgage. Snedeker v. Warring, 12 N. Y. 170. A portable gristmill may form also a part of the realty. Potter v. Cromwell, 40 N. Y. 287. Annexation, adaptability to the freehold, with permanent intent, determine that the attachments form a part of the realty. Voorhees v. McGinnis, 48 N. Y. 278. This rule applies strongly as to machinery in a business building. McRea v. Bank, 66 N. Y. 489. Such machinery is covered by a mechanic's lien on the real estate. Watts-Campbell Co. v. Yuengling, 125 N. Y. 1, 25 N. E. 1060. The lien of a mortgage covers what was realty at the acceptance of the security and all accessions to it. McFadden v. Allen, 134 N. Y. 489, 32 N. E. 21.

Nor can any distinction in this case be made as to the machinery or appliances placed in the vault where the title to the realty was not in the club, but which they used as an appurtenant under license from the city. Their establishment in the vault was a part of the

one general design for utility in the service of the building. They were connected in use with the fixtures of the building, without which they would have been of no service. As well might the judgment creditor claim that the gutter on the roof was personalty, because it overlapped the neighboring premises with the license of the owner of those premises. The license from the city was not assignable, and could not be conveyed by a voluntary or involuntary sale.

The strength of the claim that all of the articles in controversy are not severable from the realty emphasizes the seriousness of a still further objection to plaintiff's recovery. By the laws of this state, the receiver took the title of the insolvent corporation to all of its property. The rights of the plaintiff and his assignors were enveloped in the trust of the receiver, who could hold the property now in controversy as against every one, unless it was covered by a mortgage which was superior to the receiver's rights. That receiver, with deliberation, as may be presumed, accepted as a fact, what appeared to him to be evident, that the mortgagee had the first claim on those things which had been attached to the realty, and suffered the transfer to the foreclosure purchaser and the defendant without claim of title, and terminated his receivership with the acceptance by all of the creditors, including presumably plaintiff and those under whom he claims, of the assumption that he had exhausted the resources of his duty and received all of the property which he was entitled to take. He took the title subject to any lien, and, if the mortgage foreclosed his title to that which is now claimed to have been personalty, no creditor can afterwards demand it from the purchaser. If the foreclosure proceeding did not affect the property in question, the receiver still holds the title, and his discharge works not a reversion of title back to the dead club, but is simply a release to him from further responsibility. The court may reserve to the receiver further power in regard to the estate. Treacy v. Ellis, 45 App. Div. 492, 61 N. Y. Supp. 600.

The whole foundation of claim for a remedy in this action made by the plaintiff rests upon the basis of an alleged equitable lien. He seeks to broaden the scope of equitable interference in his behalf, in a case where he has no lien created by force of instrument or law, by asking the court to disregard the insolvency of the club and the title of the receiver, while at the same time he tries to narrow the reach of the just rule that the property of an insolvent corporation should be applied equally to the payment of debts, confine the equity upon which he stands to his individual self, and exclude all others from participation in the benefits of any distribution. There is no equitable consideration which justifies the lying by of his assignors or himself if this property might have been obtained for the creditors by the receiver, and the omission to seek through the receivership its possession to swell the sum to be distributed, and then, when the receivership terminated, creates a lien in favor of one who relies solely upon superior information or astuteness. Judgment for the defendant upon the merits, with costs.

Judgment for defendant, with costs.