(69 Misc. Rep. 295.)

PHIPPS v. STATE.     (No. 9,727.)

(Court of Claims of New York.     October, 1910.)

1. FIXTURES (§ 1*)—INTENT OF PARTIES.
      In determining whether property attached to realty is a fixture, the inquiry is as to the relation of the parties and what they intended when the property was attached, and, where there is no express agreement, all the facts must be examined to arrive at the unexpressed intent and the relationship of the parties considered.

      [Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 1, 6; Dec. Dig. § 1.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. FIXTURES (§ 7*)—PROPERTY ATTACHED TO REALTY.**

Where the owner of land embracing a factory for manufacturing fertilizer placed an engine therein for use in the process of manufacture, resting it upon a foundation of concrete four and a half feet thick sunk in the ground, and connecting it therewith by six three-quarter inch bolts four feet six inches long with metal bars laid on the bottom of the concrete, the concrete covering the bottom flange of the engine base, and set up a derrick in the earth supported by five metal guys, the lower end of each being anchored to a beam buried in the ground, the engine and derrick constituted "fixtures" and a part of the realty, for which the owner was entitled to compensation, where the lands were taken by the state for canal purposes through eminent domain.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 7–13; Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 3, pp. 2831–2846; vol. 8, p. 7664.]

Claim by William W. Phipps against the State for lands appropriated. Judgment for claimant.

Thomas A. Kirby, for claimant.

Edward R. O'Malley, Atty. Gen. (D. E. Brong, M. H. Quirk, and A. E. Tuck, of counsel), for the State.

RODENBECK, J. The state of New York appropriated from the claimant certain land situate at Eagle Harbor, Orleans county, N. Y., upon which he had constructed a factory for the manufacture of fertilizer, and used in connection therewith an engine house in which there were a ten horse power, double cylinder, single drum engine and derrick.

The engine rested upon a foundation of concrete which was about four and one-half feet thick, sunk in the earth, and was connected by means of six three-quarter inch bolts four feet six inches long with metal bars laid on the bottom of the concrete; the concrete covering the bottom flange of the engine base. The derrick was set up in the earth and was supported by five metal guys; the lower end of each being anchored to a beam buried in the ground. Both the engine and derrick were used for a number of years in connection with the business carried on by the claimant upon the property in the manufacture of fertilizer; the derrick being employed to transport material from the canal boats into the building, and the power being furnished by the engine.

The state, at the close of claimant's case, conceded that the claimant was entitled to an award of $3,000, if the engine and derrick were fixtures; so that the only question presented is whether or not the engine and derrick formed a part of the realty.

The law of fixtures which applies to this case is an attempt to protect the interests of those having a lesser estate than a freehold in land. In the early history of English jurisprudence there was no such thing as a fixture. The relationship of the owner and occupier of the soil did not recognize it under the system of land tenures then prevailing. The tenant was considered as a mere agent of the owner, and this relationship was not subject to contract. Whatever the oc-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cupier placed upon the soil belonged to the owner. But as society advanced, and the commercial spirit developed, modifications crept in to protect the interests of those who made improvements upon land for purposes of trade or business. The change from personalty to realty was determined by the manner and the extent to which property became attached to the freehold. If it was firmly or permanently attached, so that its removal would injure the freehold, it was regarded as having changed its character from personal property and to have become a part of the realty. This rule, however, did not work out satisfactorily in all cases, since in many business enterprises fixtures are required to be substantially and firmly attached to the freehold. This rule may now be stated as follows:

> "As between landlord and tenant the placing of machinery or other appliances by the tenant upon the leased premises, for the purpose of trade or manufacture to be carried on by the tenant, does not make the property so affixed a part of the freehold, but it still remains personalty, to such an extent at least that the tenant retains the right to remove it." Massachusetts Nat. Bank v. Shinn, 18 App. Div. 279, 46 N. Y. Supp. 329; Moore v. Wood, 12 Abb. Prac. 393.

An additional element in determining the character of the attached property was introduced, and the question of the purpose for which the property had been affixed to the realty was examined. In Berliner v. Piqua Club Ass'n, 32 Misc. Rep. 470, 472, 66 N. Y. Supp. 791, 792, Mr. Justice Russell says:

> "The courts have advanced in the last half century from the inspection as to how firmly articles have been attached to the realty, in the ascertainment as to whether they pass with it by conveyances, to the more important consideration of union in usefulness for the purposes of the structure and permanence of the association."

In the latter cases however, greater stress is placed upon the intention of the parties, and the inquiry now is: What was the relation of the parties and what did they intend when the personal property was attached to the realty? Washburn says in his work on Real Property:

> "Whether a fixture becomes a part of the land and therefore realty, 'real fixture,' or remains personalty, 'chattel fixture,' depends, according to the prevailing American doctrine, upon the reasonable intention of the annexor at the time of the annexation. This intention is to be inferred from the nature, intended use, and mode of annexation of the fixture; the situation of the annexor and his relation to the fee; and the policy of the law." Volume 1 (6th Ed.) p. 4.

In McRea v. Central National Bank, 66 N. Y. 489, 495, Judge Rapallo says:

> "But, as between vendor and vendee, the mode of annexation is not the controlling test. The purpose of the annexation, and the intent with which it was made, is in such cases the most important consideration. The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached as upon the motive and intention. of the party in attaching it. If the article is attached for temporary use with the intention of removing it, a mortgagee cannot interfere with its removal by the mortgagor. If it is placed there for the permanent improvement of the freehold, he may."

Cyc. says:

"Indeed it is sometimes said that the intent of the party annexing an article to the freehold is the most important criterion of its character as a fixture, and other circumstances or facts are valuable chiefly as evidence of such intention." 16 Cyc. 1046.

Parties may, by express agreement, fix the character of the personal property more or less substantially affixed to the freehold; and in such a case the problem is easy of solution.

"By agreement between the owner of personal property and the owner of realty, made before annexation, the personal property may be made to retain its status after annexation, or an enforceable right to remove it may be conferred upon the former owner of the personal property. The agreement may be by parol. Such an agreement or an intention that the chattel shall remain personalty may be implied from the circumstances under which the chattel is bought and affixed, as from a conditional sale, from a lease of a chattel, or from a chattel mortgage by the buyer to the seller, prior to and in some states subsequent to the annexation." 16 Cyc. p. 1048.

But, where there is no express agreement, all the facts must be examined for the purpose of arriving at the unexpressed intention; and in arriving at this intention the relationship of the parties, whether that of vendor and vendee, mortgagor and mortgagee, landlord and tenant (Moore v. Wood, 12 Abb. Prac. 393), must be considered. The rule as between landlord and tenant is the more liberal, and that between mortgagor and mortgagee (McFadden v. Allen, 134 N. Y. 489, 32 N. E. 21, 19 L. R. A. 446), condemnor and condemnee, is the same as that between vendor and vendee. The manner of annexation will be considered as one of the elements in arriving at this intention, and sometimes slight annexation will be considered sufficient to indicate an intention to transform the property from personalty to realty. In Hart v. Sheldon, 34 Hun, 38, 42, Mr. Justice Barker says:

"Mere intention to make an article personal a fixture, without annexation to the realty, will not make it one; but, when such an intention does exist in the mind of the owner of the land and of the article, then the slightest affixing will make it a part of the freehold. Such intention often becomes the controlling fact in determining the question whether, in law, the article in dispute is or is not a fixture."

Where these circumstances are such that a slight annexation is not sufficient to determine the question, then the purpose for which the property was brought upon the realty and annexed thereto will be examined into. And, where there is a unity of all these three elements, annexation, adaptability, and intention, the law uniformly recognizes the property as part of the freehold. Bronson on Fixtures, § 15, says:

"It may be stated that the primary test which is applied at the present day, in order to ascertain whether a fixture is removable or not, is the intention of the parties. This may be expressed, or it may be implied from the nature and character of the article annexed, the mode of annexation, the purpose and use to which the article is put, and the effect of its removal upon the freehold. It is interesting to note the development of this idea of intention in determining a fixture. Under the rule in its original conception, the intention of the parties was no factor. A thing annexed to the freehold

became absolutely, ipso facto, a part and parcel thereof, no matter what was the intention of the parties. But, under the exception first made in respect to trade fixtures, the intention of the party when making the annexation was really the basis of his right in being permitted, at the end of his term, to remove the fixture. This intent was shown from the purpose of the annexation. The annexation was made to assist him in carrying on his trade operations, not to improve the freehold. Likewise, when a subsequent exception was made in favor of ornamental and domestic fixtures, the intention of the parties was equally the basis of the right established. But here, not the purpose of the annexation showed the interest; rather the nature and character of the thing itself, together with its mode of annexation, and the effect of its removal. The intention of the parties, then, being the real test of the rights established under the exceptions, it follows, therefore, that the exceptions simply differ among themselves in the mode of ascertaining this intent; and since the exceptions mentioned are so broad in their scope as to include often within their boundaries fixtures that might properly be termed 'agricultural fixtures,' so as to considerably lessen the application of the common-law rule, therefore it can be readily seen that the extension of the test of intention to all fixtures would necessarily be the next progressive step in abrogating the old common-law rule. Such is the present tendency of the courts."

In this case I think there was such an annexation and adaptability of the property as to constitute the engine and derrick real estate in this proceeding. They were securely attached to the freehold and were used in connection with the business of manufacturing fertilizer. They were a part of the plant, as essential to its operation as the building itself, and, like the building, could not be removed except with such depreciation in value as would amount to an appropriation of the property without just compensation. The rule that applies is that which obtains between vendor and vendee, and a purchaser of the property for the purpose of carrying on the business would surely have acquired the engine and derrick with the building as a part of the plant. In Matter of Mayor, 39 App. Div. 589, 595, 57 N. Y. Supp. 657, 661, in speaking of the rule of fixtures between vendor and vendee, Judge Rumsey says:

"The same rule exists in proceedings to take land under the right of eminent domain, and the commissioners of estimate have no right to restrict the assessment to the simple value of the land, compelling the owner to retain the fixtures on the premises, and exempting the city from an obligation to take and pay for them as a part of the land. Schuchardt v. Mayor, 53 N. Y. 202, 208. Whatever has been put upon the land by the owner with the intention that it should remain upon the land and was essential to the use which he made of it is, generally speaking, as between himself and his vendee, a fixture, and goes with the land when he shall sell it."

When the land is in the possession of a tenant who has erected buildings under a stipulation that they may be removed at the end of the lease, the buildings are to be treated as a part of the realty. Matter of Park Com'rs (Super. Buff.) 1 N. Y. Supp. 763. In Matter of City of New York (North River Water Front) 118 App. Div. 865, 867, 103 N. Y. Supp. 908, 910, Mr. Justice Ingraham says:

"As between landlord and tenant the tenant is allowed to remove fixtures annexed to the freehold; but it is only as between landlord and tenant that the rule of the common law that anything that was annexed to the freehold by a substantial connection becomes a part of the realty has been relaxed. The city is not the landlord, and as against the tenant has not acquired the

landlord's rights, but is taking this property against the wish of both the landlord and the tenant for its own purposes. The rule that exists as between landlord and tenant, which has been evolved by the courts to prevent injustice to the tenant, should not be applied so that a beneficial use of the property is taken from the tenant without making him a fair compensation for the property as a whole."

The rule is even more liberal when the additions were trade fixtures. Matter of City of New York (North River Water Front) 192 N. Y. 295, 84 N. E. 1105, 18 L. R. A. (N. S.) 423, 127 Am. St. Rep. 903. The tenant may surrender to the lessor a part of his claim and reserve a part (Matter of City of New York [North River Water Front] 193 N. Y. 117, 85 N. E. 1064) ; but it cannot take the bare land and subject the owner to the loss of the depreciation of such structures and machinery as he had placed upon it.

Hop poles, necessarily used in cultivating the crop, have been held to be a part of the realty as between mortgagor and mortgagee, though severed from the land. Bishop v. Bishop, 11 N. Y. 123, 62 Am. Dec. 68. A statute erected as an ornament to grounds has been held to be a part of the realty as between mortgagor and mortgagee, although it is not fastened to the base on which it stands and can be removed without fracture. Snedecker v. Warring, 12 N. Y. 170. In the same case a sundial constructed on a block of similar stone erected as an ornament to grounds has been held to be a part of the realty. Snedecker v. Warring, 12 N. Y. 170. Theater chairs screwed to the floor have been held to be a part of the realty. Grosz v. Jackson, 6 Daly, 463. A portable gristmill fastened to the floor by iron rods and bolts and attached to the other machinery in the building by a belt has been held to be a part of the realty and to pass by a sheriff's deed to a purchaser. Potter v. Cromwell, 40 N. Y. 287, 100 Am. Dec. 485. Boilers, engine shafting and gearing, etc., substantially connected with a saw and grist mill, have been held to be a part of the realty and to pass to the purchaser by a foreclosure sale. Voorhees v. McGinnis, 48 N. Y. 278. Machines in a twine factory fastened to the floor by bolts, nails, or cleats and attached to the gearing, complete in themselves and removable without material injury to them or to the building, have been held to be a part of the realty. McRea v. Central Nat. Bank of Troy, 66 N. Y. 489. Mirror frames set in places left in the walls fastened by hooks and screws, the removal of which would have left the walls unfinished, have been held to be a part of the realty and subject to a mechanic's lien. Ombony v. Jones, 19 N. Y. 234; Watts-Campbell Co. v. Yuengling, 125 N. Y. 1, 25 N. E. 1060; Ward v. Kilpatrick, 85 N. Y. 413, 39 Am. Rep. 674.

A combined engine and boiler on six wheels resting upon the ground and not in any way annexed or fastened to the building and removable without injury to the building has been held to be a fixture as between mortgagor and mortgagee. Hart v. Sheldon, 34 Hun, 38. A derrick with other machinery used in connection with the operation of a stone quarry and fastened to the ground was held to be a part of the realty as between a mortgagor and mortgagee. Speiden v. Parker, 46 N. J. Eq. 292, 19 Atl. 21.

These cases, examined in the light of the facts of the case at bar, seem to warrant the conclusion that the engine and derrick should' be considered as a part of the land appropriated and to entitle the claimant to an award of $3,000, besides interest, from the date of the appropriation.

Judgment accordingly.