(153 App. Div. 17.)

WAHLE-PHILLIPS CO. v. FIFTY-NINTH ST.-MADISON AVE. CO. et al.

(Supreme Court, Appellate Division, First Department.   November 8, 1912.)

1. MECHANICS' LIENS (§ 31*)—RIGHT TO LIEN—"IMPROVEMENT OF REAL PROPERTY."

    Gas and electric light fixtures, consisting of electric light ceiling lamps or chandeliers, electric light reflectors, pendants, brackets, and lanterns, and gas and electric light brackets, specially designed and manufactured with reference to the general decorative scheme and architecture of the building in which they are installed, and to harmonize with one another, constitute an "improvement of real property," and the designing, manufacturing, installing, and furnishing thereof constitutes the performance of labor and furnishing of materials for the improvement of real property, within Lien Law (Consol. Laws 1909, c. 33) § 3, giving a lien to any person performing labor or furnishing materials for the improvement of real property, where they are intended to be permanently attached to, and form a part of, the realty, as evidenced by a provision in the lease, authorizing their installation by the lessee, that the lessee shall deliver up the premises, together with the fixtures and appurtenances.

    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 36; Dec. Dig. § 31.*

    For other definitions, see Words and Phrases, vol. 4, pp. 3454–3459.]

2. MECHANICS' LIENS (§ 73*)—CONSENT OF OWNER—PROVISIONS OF LEASE.

    A lease of property for use as a theater provided that the general decoration should be according to the desires and reasonable wishes of

the lessor and suitable for a general theater, that the lessor would pay to the order of the lessee the actual expenditures, not exceeding $15,500, for the interior decoration thereof, that the interior decoration should be made by the lessee, and that the lessor should not be responsible nor liable therefor, except on contracts relating thereto, approved and consented to by him, and that not exceeding $15,500 should be payable by him upon contracts so approved. *Held,* that this showed a consent by the lessor, within the meaning of the Lien Law (Consol. Laws 1909, c. 33), not only to interior decorations of the cost of $15,500, but of such amount as the lessee might see fit to expend thereon, subject to the landlord's approval, since, while it limited the liability of the landlord as between it and the tenant, it did not limit the amount to be expended by the tenant in making the interior decorations, which ultimately were to inure to the landlord's benefit.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 87, 88, 90–102; Dec. Dig. § 73.*]

3. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CAUSE—RENDERING FINAL JUDGMENT.

Under Code Civ. Proc. § 1317, as amended by Laws 1912, c. 380, providing that the Appellate Division or Appellate Term may reverse or affirm, wholly or partly, or modify, the judgment or order appealed from, and each interlocutory judgment or intermediate order which it is authorized to review, and shall thereupon render judgment of affirmance, judgment of reversal, and final judgment upon the right of any or all of the parties, or judgment of modification, according to law, except where it may be necessary or proper to grant a new trial or hearing, when it may grant such new trial or hearing, the Appellate Division has power, in causes tried before the court, and particularly in equity causes, where all the material evidence offered by either party has been received, to grant the judgment that should have been granted at the trial. ·

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Special Term, New York County.

Action to foreclose a mechanic's lien by the Wahle-Phillips Company against the Fifty-Ninth Street-Madison Avenue Company and others. From a judgment allowing the lien in part, disallowing it in part, and decreeing a foreclosure, plaintiff appeals, and the defendant named cross-appeals. Reversed in part, and judgment directed for plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John A. Dutton, of New York City, for plaintiff.

Walter H. Bond, of New York City, for defendant Fifty-Ninth St.-Madison Ave. Co.

LAUGHLIN, J.   This is an action to foreclose a mechanic's lien, filed against part of the premises on the easterly side of Madison avenue, extending from Fifty-Eighth street to Fifty-Ninth street, in the borough of Manhattan, New York, which were owned by John D. Crimmins, who on August 5, 1907, leased them to one Salomon for 21 years from March 1, 1908. On February 29, 1908, said Salomon sublet the part of the premises, against which the lien was filed, to one Baumfeld, for 20 years and 5 months from October 1, 1908, and on March 25, 1908, Baumfeld duly assigned this sublease to the Ger-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

man Theater, Incorporated.  Salomon assigned his lease to the Fifty-Ninth Street-Madison Avenue Company on August 11, 1908.  The materials and work, for which the lien was filed, were furnished and performed by the plaintiff under a contract with the German Theater, Incorporated.  The Fifty-Ninth Street-Madison Avenue Company at that time stood in the relation of lessee to the owner, and landlord to the German Theater, Incorporated, with whom the plaintiff contracted.  At the time Salomon sublet to Baumfeld, it appears, by recitals in the sublease to him, that the premises were known as a portion of the "Lenox Lyceum property," and that there was a building upon the premises, which evidently had been used for theatrical productions.  It was expressly provided, by the lease thus subletting part of the premises, that the landlord should alter the structure then on the premises, in accordance with plans and specifications agreed upon, so that there should be upon the premises, at the time the term under the sublease was to commence, "a theater in accordance with the intention of the parties as set forth in the plans, specifications, and this lease."  With respect to the decoration of the theater, the sublease contained the following provisions:

"The general decoration of the theater shall be according to the desires and reasonable wishes of the lessor, and shall be suitable for a general theater, and shall not be distinctly German; and the lessor hereby agrees to pay to the order of the lessee, and upon proper vouchers, the actual expenditure thereof, not to exceed fifteen thousand five hundred ($15,500) dollars, for the interior decoration of the theater, which shall be construed to include all mural paintings or ornamental woodwork, lambrequins, carpets, hangings, and chandeliers. * * * It is understood and agreed that the interior decorations shall be made by the lessee, and that the lessor shall not be responsible for nor have any liability therefor or thereon, except only on such contracts relating thereto as he shall have approved in writing and consented to, and that the sum, not exceeding fifteen thousand five hundred ($15,500) dollars, shall only be payable upon vouchers issued upon such contracts so approved."

[1] The record does not definitely show the extent of the changes and alterations made by Salomon, or by his assignee, the Fifty-Ninth Street-Madison Avenue Company, pursuant to this lease to Baumfeld; but with respect to the interior decorations it appears that $15,-599.05 was paid by the Fifty-Ninth Street-Madison Avenue Company for such work to contractors other than the plaintiff.  On the 14th day of September, 1908, or 17 days before the term under the sublease was to commence, the German Theater, Incorporated, made a contract with the plaintiff for the *manufacture* and installation of interior decorations, under which the lien was filed.  The contract embraces gas and electric fixtures, and the plaintiff agreed to furnish and install the fixtures in the theater for $1,740.  The schedule of fixtures furnished and installed by the plaintiff embraced electric light ceiling lamps or chandeliers, electric light reflectors, pendants, brackets, and lanterns, and gas and electric light brackets.  The evidence shows that they were all specially designed with reference to the general decorative scheme and architecture of the building, and to harmonize with one another, and were specially manufactured by the plaintiff from such designs.

The trial court sustained the lien with respect to one of the electric ceiling lamps or chandeliers, described as a "sunburst," but disallowed the lien in all other respects. The defendant Fifty-Ninth Street-Madison Avenue Company contends that none of these fixtures constituted an "improvement of real property," within the intent and meaning of section 3 of the Lien Law (Consolidated Laws, c. 33), which provides as follows:

"A contractor, subcontractor, laborer or materialman, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article."

The term "owner," as used in the Lien Law, is defined by section 2 as including "the owner in fee of real property, or of a less estate therein," and "a lessee for a term of years." The plaintiff contends that furnishing and installing all of these fixtures constituted the furnishing of materials and the performance of labor "for the improvement of real property," within the contemplation of the statute.

The fixture, with respect to which the trial court sustained the lien, consisted of a 48 electric light ceiling lamp or chandelier, suspended from the ceiling of the main auditorium. It weighed between 400 and 500 pounds, and was between 7 and 8 feet in diameter. The ceiling, at the point where it was attached, prior to its installation, was a wire lathing attached to the horizontal part of the angle irons, and the underside of the lathing was covered with plaster. In order to attach this chandelier to the ceiling, seven or eight holes, each about 4 inches in diameter, were broken through the ceiling, through which wires were run, which were attached to the chandelier and to the angle irons above. The chandelier consisted of several tiers of lights, one below another, attached together, but disattached from the upper part of the chandelier, so that they could be lowered to the floor, about 50 feet below, by a block and fall, consisting of ropes and pulleys, the ropes passing through another hole in the ceiling 7 or 8 inches in diameter, made for that purpose. The lights of the chandelier were connected with the wiring in the building by four circuits, each consisting of two wires fastened together by being twisted and soldered to make electrically secure joints, around which okonite tape was wound, and around it a friction tape. The other fixtures embraced insulating joints, which covered the openings in the walls, through which the wires from the outlet boxes projected, and which were screwed onto the studs of the building, and brackets and chandeliers, which were then screwed into the insulating joints, and wires passing from the lamps, through the brackets and chandeliers, and connected with the wires projecting from the outlet boxes in the insulating joints, by a process known as splicing, consisting of twisting, soldering, and winding, as already described with respect to the large chandelier. As additional evidence that these fixtures were intended to be permanently attached to and form part of the realty,

which is an important consideration in deciding such a question (Union Stove Works v. Klingman, 20 App. Div. 449, 46 N. Y. Supp. 721; Berliner v. Piqua Club Ass'n, 32 Misc. Rep. 470, 66 N. Y. Supp. 791), we find a provision in the sublease from Salomon to Baumfeld, by which the lessee agreed—

"upon the end of sooner termination of such term to deliver up the said premises and quit and surrender the same, together with the fixtures and appurtenances, in as good state and condition as reasonable use and wear thereof will permit, damages by fire and elements excepted."

The learned counsel for the Fifty-Ninth Street-Madison Avenue Company relies upon the decision of this court in Caldwell v. Glazier, 138 App. Div. 826, 123 N. Y. Supp. 622, to support the proposition that none of these fixtures constitute an "improvement of real property." The facts of that case, however, distinguish it from the case at bar. The gas and electric fixtures there in question were not specially designed or manufactured for the particular use, but were such as might have been obtained in the market, and were so obtained. We are of opinion that the labor of designing, manufacturing, and installing these fixtures, and the furnishing of the fixtures, constituted the performance of labor and furnishing of materials "for the improvement of real property," within the provisions of the Lien Law.

[2] The only other question which requires consideration arises on the contention of the Fifty-Ninth Street-Madison Avenue Company that the labor and materials were not performed or furnished with its consent or at its request. We are of opinion that the provisions of the lease herein quoted show that the Fifty-Ninth Street-Madison Avenue Company consented, not only to interior decorations of the cost of $15,500, but of such amount as the lessee might see fit to expend thereon, subject, of course, to approval of the landlord, as provided in that part of the lease hereinbefore quoted. The lease limited the liability of the landlord, as between it and the tenant, but did not limit the amount to be expended by the tenant in making the interior decorations, which ultimately were to inure to the benefit of the landlord. Moreover, aside from these provisions of the lease, the evidence tends to show that the Fifty-Ninth Street-Madison Avenue Company participated in the negotiations which resulted in the making of the contract, under which the lien was filed, and consented to the performance of the work and to the furnishing of the materials.

[3] In view of the recent amendment to section 1317 of the Code of Civil Procedure by chapter 380 of the Laws of 1912, we are of opinion that it was intended by the Legislature to confer power upon the court, on appeal in causes tried before the court, and particularly in equity causes, where all the material evidence offered by either party has been received, to grant the judgment that should have been granted at the trial, and therefore, being of opinion on the evidence in this record that the plaintiff was entitled to judgment sustaining its lien in toto, such judgment may be now awarded.

It follows that the judgment, in so far as it adjudges that the plaintiff has no lien, except for labor performed and materials furnished in manufacturing and installing the fixture known as the "sunburst"

138 N.Y.S.—2

in said premises, should be reversed, with costs to the plaintiff appellant, and the judgment modified, by sustaining the lien in toto.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.   INGRAHAM, P. J., concurs in result.

---

(153 App. Div. 312.)

## In re OSBORNE.

(Supreme Court, Appellate Division, Second Department.   November 15, 1912.)

1. WILLS (§ 684*)—TRUST ESTATE—"INCOME"—CORPORATE STOCK DIVIDEND.
    Under a testamentary gift of the residuary estate, consisting of corporate stock, of testator in trust, to pay the income to a beneficiary for life, with gift over of the estate on her death, a stock dividend, representing accumulated profits, earned in part during testator's lifetime and in part after his death, goes to the life tenant as "income," which is gain or profit, and which proceeds from labor, business, property, or capital.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1614–1628; Dec. Dig. § 684.*
    For other definitions, see Words and Phrases, vol. 4, pp. 3501–3507; vol. 8, p. 7685.]

Appeal from Surrogate's Court, Kings County.