(85 Misc. Rep. 238)

### EMPIRE CITY IRON WORKS v. MARGOLIES et al.

(City Court of New York, Trial Term. April, 1914.)

1. MECHANICS' LIENS (§ 26*)—"PERMANENT IMPROVEMENTS"—WHAT CONSTITUTE.

Steel beams and attached plates, which became an integral part of the reconstructed front of leased buildings, altered by the lessee holding under a lease providing that, upon expiration of a three-year term, "all improvements upon and additions to the demised premises" should belong to the owner of the premises, constituted "permanent improvements," as defined by Lien Law (Consol. Laws, c. 33 [Laws 1909, c. 38]) § 2.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 27–29; Dec. Dig. § 26.*

For other definitions, see Words and Phrases, vol. 6, p. 5312.]

2. MECHANICS' LIENS (§ 281*)—RIGHT TO LIEN—LANDLORD AND TENANT.

Where three-year leases of three private dwellings to be occupied as stores required the tenant to make all repairs, and were subject to cancellation on 60 days' notice during the third year, and provided that on expiration or cancellation all improvements were to become his property, and where the work of alteration under a contract between plaintiff and the tenant was well under way before the leases went into effect, and the circumstances of the transaction supported the inference arising from these facts that the work of altering the premises was done "with the consent or at the request of the owner," within Lien Law (Consol. Laws, c. 33 [Laws 1909, c. 38]) § 3, giving a lien on the property improved for work so done, plaintiff was entitled to enforce a mechanic's lien both against the fee and the leasehold.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 565–572; Dec. Dig. § 281.*]

Action by the Empire City Iron Works against Edward Margolies and another to foreclose a mechanic's lien. Judgment for plaintiff.

Herman M. Schaap, of New York City, for plaintiff.
David L. Podell, of New York City, for defendants.

RANSOM, J. The question presented is whether the plaintiff has established and is entitled to foreclose a mechanic's lien upon the fee interest of the defendant William Waldorf Astor in the premises Nos. 13–15–17 East Thirty-Fifth street, in the borough of Manhattan. As to the defendant Edward Margolies and his leasehold interest in the premises, I find that the plaintiff has established every element essential to the enforcement of a lien thereon for $346.30, with interest from July 8, 1913, amounting in all to $361.28, together with taxable costs and disbursements.

---

[1] As to the plaintiff's claim that he is entitled to enforce his lien also against the owner, the material facts are these: Section 3 of the Lien Law (Consol. Laws, chap. 33; Laws of 1909, chap. 38) provides as follows:

"A contractor, sub-contractor, laborer or materialman, who performs labor or furnishes materials for the improvement of real property *with the consent or at the request of the owner* thereof, or of his agent, contractor or subcontractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article."

Under the definitions contained in section 2 of the Lien Law:

"The term 'improvement' * * * includes the erection, alteration or repair of any structure upon * * * any real property and any work done upon such property, or materials furnished for its permanent improvement."

Inasmuch as the plaintiff's lien is based upon the supply of certain steel beams and attached plates, which became an integral part of the supports of the reconstructed front of the three buildings altered, and inasmuch as Margolies' lease with the defendant Astor provided that, upon the expiration of a three-year term, "all improvements upon and additions to the demised premises" shall become the property of the owner of the premises, the materials furnished and labor performed by the plaintiff come clearly within the category of permanent improvements of the real estate. Wahle-Phillips Co. v. Fifty-Ninth Street-Madison Ave. Co., 153 App. Div. 17, 138 N. Y. Supp. 13; Caldwell v. Glazier, 138 App. Div. 826, 123 N. Y. Supp. 622; McKeage v. Hanover Fire Ins. Co., 81 N. Y. 38, 37 Am. Rep. 471; Wahle-Phillips Co. v. Fitzgerald, 83 Misc. Rep. 636, 146 N. Y. Supp. 562; Rice v. Culver, 172 N. Y. 60, 64 N. E. 761.

[2] The question remains whether the work was done "with the consent or at the request of the owner" of the premises. The defendant Astor owned three private houses in East Thirty-Fifth street. On March 18, 1913, the defendant Astor leased the premises to the defendant Margolies. The three leases entered into on that date each provides that the respective premises shall "be occupied as stores and lofts for such business or purposes as are not contrary to the restrictions hereinafter contained." Material portions of the leases include the following:

Tenancy for three years from May 1, 1913, with a proviso that upon 60 days' notice at any time on or after May 1, 1915, the tenant shall surrender the premises, and with provisions, also, for the earlier forfeiture of the lease upon the happening of any one of enumerated contingencies. Payment of $3,000 a year rental for each of the three properties.

Agreement that "after such repairs are made as may be agreed upon in writing with the landlord, for him to do on the execution of this agreement, that then the tenant shall, at his own cost and expense, make and do all the repairs required to the said demised premises, with the appurtenances and fixtures of every kind, and also the replacing of any broken plate or window glass, during his tenancy."

Agreement that *"at the end or other expiration of the term"* the tenant "shall deliver up the demised premises and the appurtenances and fixtures, *including all improvements upon and additions to* the demised premises by him or his representative, in good order and condition, damage by the elements excepted."

Agreement that the tenant shall not "make any alterations in the building or premises without the landlord's consent in writing," and that breach of this covenant shall entitle the landlord to declare the lease forfeited. Vosseller v. Slater, 25 App. Div. 368, 49 N. Y. Supp. 478, affirmed 163 N. Y. 564, 57 N. E. 1127; Rice v. Culver, 172 N. Y. 60, 66, 64 N. E. 761.

As to No. 15 East Thirty-Fifth street, there appears to have been a prior lease, similar in form, between the parties, with the rental thereunder $2,400, the term one year, and the date of expiration May 1, 1913. No written consent of the landlord to any repairs or alterations was produced. At the time the parties, on March 18, 1913, signed leases to date from May 1, 1913, the premises described as to be used for "stores and lofts" were private dwellings. It appears from the records of the building department that on May 8, 1912, the date of Margolies' original lease of No. 15 East Thirty-Fifth street, plans for the alteration of those premises were filed, asking approval for the reconstruction of this brownstone residence so as to be suitable for occupancy for "stores and dwelling." A long controversy followed with the building department, which disapproved several submitted plans and amendments thereof for these alterations. On March 4, 1913, two weeks before the Margolies leases were signed, an application was filed with the building department for the alteration of Nos. 13, 15, and 17 from "residences" to "stores and residences." This application and a subsequent amendment thereof were disapproved by the department in certain details, and were withdrawn on March 18, 1913, the very day the leases with Margolies were signed. On March 19, 1913, the day after the leases were signed, an application, dated February 21, 1913, was filed, for the alteration of the three residences, at an estimated cost of $10,000. The new plans varied but slightly from the old. The work to be done included the removal of the old "stoop" and the insertion of "show windows," with provisions for support of the existing walls. This application described Edward Margolies as the lessee. On March 28, 1913, the defendant Margolies made a contract with the plaintiff for the supplying of certain I-beams, with bearing plates and separators, and one coat of red paint therefor. The building department did not consider that adequate provision had been made, in the plans filed, for supporting beams and attached plates in the front wall over the added show windows, and so notified Margolies, who then arranged to have the plaintiff supply the extra beams and plates which are the basis of the plaintiff's valid lien against Margolies' leasehold. The beams were an integral and necessary part of the front wall of the reconstructed building, and were required by the building department to be provided as a condition precedent to its approval of the work of altering these "dwellings" to be "stores and lofts."

Do the facts recited, when taken in connection with the other evidence and the atmosphere of the transactions as developed upon the trial, require a finding that the work of altering these dwellings to be "stores and lofts" was done "with the consent or at the request of the owner?" I am of the opinion that such is the fact. The owner knew, on March 18, 1913, when he signed three-year leases of three private dwellings to "be occupied as stores and lofts," that these three old brownstone dwellings would have to be radically altered before such use. Plans for such alterations, at a specified cost of $10,000, had been filed two weeks before the leases were signed. The variations between those plans and those finally approved were only in slight details. The lease required the lessee to make all repairs; the premises could not be used for "stores and lofts," except on an expenditure estimated at $10,000, or more than a year's rental for all three properties; the tenancy was only for 3 years, subject to cancellation on 60 days' notice at any time after 2 years; the leases contained clauses giving the landlord the right of cancellation and forfeiture at any time upon the happening of certain contingencies; and upon expiration or cancellation all improvements were to become the property of the landlord, without any right of the tenant to remove any part of them. The landlord knew that $10,000 or more of somebody's labor and materials would necessarily go into the landlord's property, as a permanent part of his buildings, and that the benefit of this labor and these materials would become his in three years or before.

I consider section 3 of the Lien Law to be a salutary enactment of "the equitable principle that one who knowingly takes the benefit of the property or labor of another, in the form of improvements made upon his land, ought to have the land subjected to a lien for the value thereof." Nellis v. Bellinger, 6 Hun, 560; Wahle-Phillips Co. v. Fitzgerald, 83 Misc. Rep. 636, 146 N. Y. Supp. 562; Wahle-Phillips Co. v. Fifty-Ninth Street-Madison Ave. Co., supra; Husted v. Mathes, 77 N. Y. 388; Burkitt v. Harper, 79 N. Y. 273; Otis v. Dodd, 90 N. Y. 336; McNulty Bros. v. Offerman, 141 App. Div. 730, 126 N. Y. Supp. 755; Rice v. Culver, 172 N. Y. 60, 64 N. E. 761. From all the evidence, I am of the opinion that the owner, by his representatives and agents, was "an affirmative factor in procuring the improvement to be made," and that, "having possession and control of the premises," he assented "to the improvement in the expectation that he would reap the benefit of it," within the meaning of the rule laid down by the Court of Appeals in Rice v. Culver, supra. The contracts had been let, the plans amended so as to receive the full approval of the building department, and the work of alteration was well under way before May 1, 1913, the date when the leases went into effect, and the owner was presumably, up to that date, in control and possession of his property, at least aside from No. 15 East Thirty-Fifth street. See Rice v. Culver, 172 N. Y. 60, 68, 69, 64 N. E. 761.

As to the lien against the leasehold, it is sufficient to say that the defendant Margolies raised only two objections to the enforcement of such lien: (1) That his secretary, who gave the plaintiff the written orders to supply the additional beams and plates, over and above the number specified in the original contract, had no authority to sign such

orders; and (2) that the giving of such orders by Margolies' secretary was induced by a false representation of facts. The first-stated contention was abandoned by the defendant's counsel on the trial and in his brief; the second is equally unsupported by the facts of the case; and plaintiff is plainly entitled to its lien against the leasehold. To leave the materialman with a lien only against the leasehold, under circumstances such as are disclosed in this case, would, however, make the statute an instrument of the kind of injustice and evasion which it was plainly the legislative purpose to end.

Judgment accordingly.